739 So.2d 603 (1998)
OWENS-CORNING FIBERGLAS CORPORATION, Appellant,
v.
Deward BALLARD, Appellee.
Nos. 97-1514, 97-1684.
District Court of Appeal of Florida, Fourth District.
April 29, 1998.
*604 Larry L. Simms, Mark A. Perry of Gibson, Dunn & Crutcher LLP, Washington, DC; Steven R. Berger of Berger & Chafetz, Miami; Donna L. Harvey of Speziali, Greenwald, Kueny & Hawkins, Orlando; and Arthur J. England, Jr., of Greenberg Traurig Hoffman Lipoff Rosen & Quentel, P.A., Miami, for appellant.
John F. Venable of Venable and Venable, P.A., Tampa; Daniel F. O'Shea and Angel M. Reyes of Ratiner, Reyes & O'Shea, P.A., Miami, for appellee.
POLEN, Judge.
In this products liability action, appellant, Owens-Corning Fiberglas Corp., the manufacturer of Kaylo, a carcinogenic asbestos-containing product, seeks reversal of judgment in favor of appellee, Deward Ballard, including an award of $31 million *605 in punitive damages. We affirm on all points raised.
Ballard, a non-Florida resident, brought the instant action against Owens-Corning, alleging he had been exposed to Kaylo during the 1960's and 1970's in six separate states, but not in Florida. Three years after the complaint was filed, two months after the case was ordered set for trial and three months before the trial actually commenced, Owens-Corning filed a motion to dismiss based on forum non conveniens. The court, finding the case was ready for trial, denied the motion.
The case proceeded to a bifurcated jury trial in January, 1997. After Phase I ended, the jury found that Owens-Corning was negligent and strictly liable to Ballard for selling Kaylo. It assessed compensatory damages of $1.8 million, and determined Owens-Corning also was liable for punitive damages. Owens-Corning immediately moved for a directed verdict on punitive damages, arguing for the first time it could not be punished for conduct outside Florida. The trial court reserved ruling on that issue.
In Phase II, Ballard presented evidence as to the company's financial position, and Owens-Corning testified as to both the small profits from Kaylo sales and the financial burdens placed on the company by a deluge of asbestos claims. The jury awarded $31 million in punitive damages.
Owens-Corning then filed several post-trial motions, including a motion for new trial based on the previous denial of its motion to dismiss for forum non conveniens, and motions alleging that the punitive damages award was unconstitutional and excessive. The court denied its motions and entered final judgment.

I. Forum Non Conveniens
The trial court exercises sound discretion in determining whether or not to dismiss a case for forum non conveniens. Ciba-Geigy Ltd. v. Fish Peddler, Inc., 691 So.2d 1111, 1115 (Fla. 4th DCA), rev. denied, 699 So.2d 1372 (Fla.1997); Fla. R. Civ. P. 1.061(a) (1997). This discretionary power is subject only to the test of reasonableness, which, in turn, requires a determination of whether there is logic and justification for the result. Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980); Ciba, 691 So.2d at 1115. Under these principles, we do not believe the court abused its discretion in denying Owens-Corning's motion.
Kinney System, Inc. v. Continental Insurance Co., 674 So.2d 86 (Fla.1996), is the seminal case governing the law of forum non conveniens. Kinney requires that, before a court dismisses a case based on forum non conveniens, it must (1) establish whether an adequate alternative forum exists; (2) consider all relevant factors of private interest, with the presumption against disturbing the plaintiffs initial choice of forum; (3) assuming it finds the balance of private interests in equipoise, determine whether factors of public interest tip the balance in favor of trial in another forum; and (4) if the balance favors such a forum, ensure the plaintiff may reinstate his suit in that forum without undue inconvenience or prejudice. Id. at 90.
Even if these four factors are met, however, Kinney does not always mandate dismissal. Kinney states that it would be contrary to the doctrine to order dismissal where the parties have substantially completed discovery or are now ready for a Florida trial. Id. at 94. In addition, it specifically directs lower courts not to order dismissal if doing so would actually undermine the interests that the doctrine seeks to preserve, including avoiding a waste of resources, avoiding forcing a plaintiff into a forum where a statute of limitation may have expired, or other similar problems. Id. at 93-94.
In light of these exceptions, and the fact that Owens-Corning waited over three years into litigation and shortly before trial to make the motion, the trial court below apparently concluded that *606 both parties had engaged in sufficient discovery to be ready for trial. As we are constrained by the limited record at bar, we cannot say that denial of its motions on these grounds was an abuse of discretion. See Carenza v. Sun Int'l Hotels, Ltd., 699 So.2d 830 (Fla. 4th DCA 1997).

II. Punishing Conduct Occurring Outside the State of Florida
Owens-Corning next argues that the imposition of punitive damages should have been barred in this case under the Due Process Clause of the Fourteenth Amendment since the conduct of which Ballard complained was wholly unrelated to the State of Florida. In this regard, it cites to BMW of North America, Inc. v. Gore, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996).
BMW involved a plaintiff who sued BMW in Alabama based on BMW's failure to disclose that a car that it sold to plaintiff in Alabama had been damaged and then repainted. At trial, BMW acknowledged it had adopted a nationwide policy concerning cars that were damaged, whereby if the repair cost did not exceed 3% of the suggested retail price, the car was sold as new without advising the dealer that any repairs had been made. On review of an award of punitive damages against BMW, the plaintiff argued to the Supreme Court that the large punitive damages award was necessary to induce BMW to change its nationwide policy.
In response to this argument, the Court first looked at other states' disclosure policies regarding repairs to previously damaged cars. It found that several states had legislation which, in essence, allowed similar policies to that of BMW. As such, it concluded that this demonstrated "that reasonable people may disagree about the value of a full disclosure requirement." Id. at 570, 116 S.Ct. at 1597. Accordingly, it reversed the award, holding that Alabama "may not impose economic sanctions on violators of its laws with the intent of changing tortfeasors' lawful conduct in other States." Id. (citing Bordenkircher v. Hayes, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978) ("To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort.")). However, since the verdict was based in part on out-of-state conduct that was lawful where it occurred, the Court specifically left open the question of whether one State may properly attempt to change a tortfeasor's unlawful conduct in another State. Id., 517 U.S. at 574 n. 20, 116 S.Ct. at 1598 n. 20.
Only one federal case since BMW has addressed this question. In Continental Trend Resources, Inc. v. OXY USA, Inc., 101 F.3d 634 (10th Cir.1996), cert. denied, 520 U.S. 1241, 117 S.Ct. 1846, 137 L.Ed.2d 1049 (1997), which involved tort claims for interference with contracts and prospective business advantage, the Tenth Circuit noted that, unlike in BMW, the defendant's conduct below would be tortious in any state. Still, the court held that, "we read the [BMW] opinion to prohibit reliance upon inhibiting unlawful conduct in other states." Id. at 637.
We do not find Continental's interpretation of BMW helpful or persuasive. The opinion ignores that, in BMW, the record specifically reflected that Alabama was seeking to impose the punitive damages award as a stance against BMW's nationwide policy. Since the policy was not considered tortious in several other states, the Court found that the effect of the award would be to sanction lawful behavior. In contrast, where the defendant's conduct is considered tortious in all 50 states, as here, the same due process concerns implicated in BMW do not arise.
In any event, we can better resolve this dispute by referring to the parties' pretrial stipulation. Owens-Corning stipulated that the amount of punitive damages to be assessed against it under Florida law was an issue to be determined by the jury. Since it never specifically sought relief *607 from the stipulation, we find it waived this argument. See Henrion v. New Era Realty IV, Inc., 586 So.2d 1295, 1298 (Fla. 4th DCA 1991)(holding, under Florida law, to obtain relief from a stipulation, a party must make a reasonable motion to withdraw the stipulation supported by an affidavit showing good cause).

III. Presumptively Excessive Punitive Damages Award
Owens-Corning then argues that the punitive damages award in this case was unconstitutional and excessive, since it was approximately 17 times the amount of compensatory damages awarded. Generally, a verdict for punitive damages is excessive where the award bears no relation to the amount the defendant is able to pay and where the tort committed is lacking the degree of maliciousness to sustain the amount of the verdict. Wackenhut Corp. v. Canty, 359 So.2d 430, 435-36 (Fla.1978); see also St. Regis Paper Co. v. Watson, 428 So.2d 243, 248 (Fla.1983)(holding a punitive damages award must not bankrupt the defendant, and must be proportionate to the magnitude of the wrong committed). Moreover, when any punitive damages award is greater than three times the amount of compensatory damages awarded, the award is presumed excessive unless the plaintiff shows, through clear and convincing evidence, that the award is not excessive in light of the facts and circumstances which were presented to the trier of fact. § 768.73(1), Fla. Stat. (1993); Jenkins, 409 So.2d at 1042.
While the presumptively excessive punitive damages award in this case raises our judicial eyebrows at first glance, it does not shock our judicial conscience given the instant facts. The evidence at trial showed that Owens-Corning knew of the deleterious health risks associated with Kaylo for decades, yet consciously made a purely economic decision not to warn its consumers, change its process, remove the asbestos, and/or replace the fibers with readily available, asbestos-free fibers. As a result of this conduct, Ballard was exposed to Kaylo at several job sites and developed terminal lung cancer. Considering the level of reprehensibility of the conduct involved, and the actual harm done to Ballard, we find that the punitive damages award, while facially disproportionate to the amount of compensatory damages awarded, is not against the manifest weight of the evidence on this ground. See, e.g., Owens-Corning Fiberglas Corp. v. Rivera, 683 So.2d 154 (Fla. 3d DCA 1996), rev. denied, 691 So.2d 1080 (1997); W.R. Grace & Company-Conn. v. Waters, 638 So.2d 502 (Fla.1994); Johns-Manville Sales Corp. v. Janssens, 463 So.2d 242, 249 (Fla. 1st DCA 1984), petition for rev. denied, 467 So.2d 999 (Fla.1985).
Moreover, we do not find that the award will bankrupt Owens-Corning. Owens-Corning attempts to argue that, because it has 7,000 Kaylo-related claims currently pending, and has paid millions of dollars in punitive damages for other such claims in the past, the award will ruin it financially. However, Owens-Corning did not tender any evidence at trial as to the amount of sums it had paid in punitive damages for similar conduct in the past; accordingly, it may not offer it here. See Stevens v. Owens-Corning Fiberglas Corp., 49 Cal. App.4th 1645, 57 Cal.Rptr.2d 525 (1996)(rejecting the company's strategy of withholding evidence on prior punitive damages in an attempt to later attack a punitive damages award). Given that the record supports that the award was less than 2% of Owens-Corning's net worth, and that Owens-Corning conceded that an punitive damages award of $10 million would not hurt it financially, we do not find that the trial court's failure to reduce the award was an abuse of discretion. See Siedlecki v. Arabia, 699 So.2d 1040, 1041 (Fla. 4th DCA), cause dismissed sub nom., Biscayne Ins. Co. v. Arabia, 705 So.2d 7 (Fla.1997), rev. dismissed, 707 So.2d 1126 (Fla. Jan. 23, 1998)(Table No. 91, 789); Bill Branch Chevrolet, Inc. v. Burkert, 521 So.2d 153, 155 (Fla. 2d DCA), rev. denied, 531 So.2d 167 (Fla.1988). However, since *608 we have been unable to locate any punitive damages award against Owens-Corning as large as that awarded in this case based on similar conduct, we certify the following question to the Supreme Court as one of great public importance:
IS THE STATUTORY PRESUMPTION AS TO EXCESSIVE PUNITIVE DAMAGES, FOUND IN SECTION 768.73(1), FLORIDA STATUTES, OVERCOME IN A CASE WHERE THE PUNITIVE DAMAGES AWARD IS ALMOST 18 TIMES THE COMPENSATORY DAMAGES AWARDED, WHEN IT IS BASED ON CLEAR AND CONVINCING EVIDENCE THAT THE AWARD WAS LESS THAN 2% OF THE DEFENDANT'S COMPANY'S NET WORTH, AND THAT THE DEFENDANT'S CONDUCT WAS MORE EGREGIOUS THAN THE STANDARD OF WANTON AND WILFUL DISREGARD FOR THE SAFETY OF THE PLAINTIFF?
AFFIRMED.
DELL and STEVENSON, JJ., concur.