749 So.2d 483 (1999)
OWENS-CORNING FIBERGLAS CORPORATION, Petitioner,
v.
Deward BALLARD, Respondent.
No. 92,963.
Supreme Court of Florida.
August 26, 1999.
Arthur J. England, Jr. of Greenberg Traurig, P.A., Miami, Florida, and Larry L. Simms of Gibson, Dunn & Crutcher LLP, Washington, D.C., for Petitioner.
John F. Venable of Venable and Venable, P.A., Tampa, Florida, and Daniel F. O'Shea of Ratiner, Reyes and O'Shea, P.A., Miami, Florida, for Respondent.
ANSTEAD, J.
We accepted jurisdiction to answer the following question certified to be of great public importance:
IS THE STATUTORY PRESUMPTION AS TO EXCESSIVE PUNITIVE DAMAGES, FOUND IN SECTION 768.73(1), FLORIDA STATUTES, OVERCOME IN A CASE WHERE THE PUNITIVE DAMAGES AWARD IS ALMOST 18 TIMES THE COMPENSATORY DAMAGES AWARDED, WHEN IT IS BASED ON CLEAR AND CONVINCING EVIDENCE THAT THE AWARD WAS LESS THAN 2% OF THE DEFENDANT COMPANY'S NET WORTH, AND THAT THE DEFENDANT'S CONDUCT WAS MORE EGREGIOUS THAN THE STANDARD OF WANTON AND WILFUL DISREGARD *484 FOR THE SAFETY OF THE PLAINTIFF?
Owens-Corning Fiberglas Corp. v. Ballard, 739 So.2d 603, 608 (Fla. 4th DCA 1998). We answer the certified question in the affirmative and approve the decision of the court below.

MATERIAL FACTS
Respondent Deward Ballard, a nonresident of Florida, brought the instant action against petitioner Owens-Corning, alleging that during the 1960s and 1970s he had been exposed to a dangerous asbestos product manufactured by Owens-Corning. Three years after the complaint was filed, two months after the case was ordered set for trial, and three months before the trial actually commenced, Owens-Corning filed a motion to dismiss based on forum non conveniens. The trial court denied the motion.
The case proceeded to a bifurcated jury trial in January 1997. According to the evidence at trial, Ballard was diagnosed with mesothelioma, a rare form of cancer of the lining of the chest, due to exposure to Owens-Corning's product containing asbestos fibers. The evidence indicates that Owens-Corning produced Kaylo, a product containing asbestos fibers, for approximately thirty years, or until 1972 when Owens-Corning finally ceased using asbestos in its products. During the time that Owens-Corning produced Kaylo, Ballard worked on numerous job sites around the nation where he was exposed to Kaylo. After the trial on the liability issue, the jury found Owens-Corning was negligent and strictly liable to Ballard for selling Kaylo. It assessed compensatory damages of $1.8 million and determined Owens-Corning also was liable for punitive damages.[1]
During the punitive damages portion of the trial, Ballard presented evidence as to the company's financial position and reaction concerning the asbestos litigation. The evidence included a 1996 Fact Sheet, a 1995 Annual Report, and a copy of 1992 Annual Meeting Remarks by CEO Glen H. Hiner. The 1996 Fact Sheet provides Owens-Corning's income statement and balance sheet and indicates Owens-Corning's projected goal to reach some $5 billion in total sales by the year 2000. At the time of trial, the company's net income for 1995 was $231 million and its most recent market value was $2.5 billion (based on the number of outstanding shares of common stock). As for the company's response concerning the asbestos litigation, the 1995 Annual Report revealed Hiner's belief that the "vast majority of new claimants are not sick" and that "many of the cases were filed by lawyers eager to maximize their fees before tort reform legislation goes in effect." Hiner also remarked that the company had placed the asbestos litigation behind it and will focus instead on building the company's enterprise and not on "shedding tears about the past." Finally, the 1995 Annual Report indicates that due to reserved funds and insurance coverage, the pending and future asbestos litigation claims "will not have a materially adverse effect on the company's financial position." A representative from Owens-Corning testified as to both the small profits from Kaylo sales and the financial burdens placed on the company by a deluge of asbestos claims.
The factors instructed upon by the judge to the jury to consider in resolving the punitive damages issue included: (1) an amount reasonable in relation to the harm likely to result from Owens-Corning's conduct as well as the harm that actually has occurred; (2) the degree of reprehensibility of Owens-Corning's conduct, the duration of that harmful conduct, Owens-Corning's awareness, any concealment and the *485 existence and frequency of similar past conduct; (3) the profitability to Owens-Corning of the wrongful conduct and the desirability of removing that profit and of having Owens-Corning also sustain a loss; (4) the financial condition of Owens-Corning and the probable effect thereon of a particular judgment; (5) all the costs of litigation to defendant and to the plaintiff; (6) the total punishment Owens-Corning has or will probably receive from other sources, as a mitigating factor; (7) the seriousness of the hazard to the public, the attitude and conduct of Owens-Corning upon discovery of the misconduct; (8) the degree of Owens-Corning's awareness of the hazard and of its excessiveness; (9) the number and level of employees involved in causing or covering up the marketing misconduct; (10) the duration of both the improper marketing behavior and its cover-up; and (11) the existence of other civil awards against Owens-Corning for the same conduct. Thereafter, the jury deliberated and subsequently assessed $31 million in punitive damages against Owens-Corning.
Owens-Corning then filed several motions for new trial, including a motion contesting the excessive amount of the punitive damages award. The trial court denied the various motions, specifically finding that clear and convincing evidence supported the jury's punitive damages award. On appeal, the Fourth District held, in part, that the punitive damages award against Owens-Corning was not against the manifest weight of the evidence based on the actual harm to the respondent and others where the evidence showed that "Owens-Corning knew of the deleterious health risks associated with Kaylo for decades, yet failed to warn its consumers, change its process, remove the asbestos, and/or replace the fibers with readily available, asbestos-free fibers." Ballard, 739 So.2d at 608. The district court also noted that the punitive award was less than two percent of Owens-Corning's net worth, which was measured in billions of dollars. Accordingly, the district court held that the trial court did not abuse its discretion in failing to reduce the punitive damages award. Id.[2] In certifying the question to this Court, the district court, in essence, asks us to check its work here.[3]

LEGAL ANALYSIS
In 1986, the Florida Legislature enacted section 768.73, Florida Statutes (1997), which created statutory criteria for judicial review of punitive damage awards exceeding three times the amount awarded for compensatory damages. See § 768.73(1)(b), Fla. Stat. (1997). Section 768.73 states in pertinent part:
(1)(a) In any civil action ... involving willful, wanton, or gross misconduct, the judgment for the total amount of punitive damages awarded to a claimant may not exceed three times the amount of compensatory damages awarded to each person entitled thereto by the trier *486 of fact, except as provided in paragraph (b)....
(b) If any award for punitive damages exceeds the limitation specified in paragraph (a), the award is presumed to be excessive and the defendant is entitled to remittitur of the amount in excess of the limitation unless the claimant demonstrates to the court by clear and convincing evidence that the award is not excessive in light of the facts and circumstances which were presented to the trier of fact.

See id. § 768.73(1)(a)-(b) (emphasis added). While the statute provides an initial cap on punitive damages of three times the amount of compensatory damages, it also provides for an exception to the cap where clear and convincing evidence establishes that the plaintiff is entitled to the excess verdict.[4] It is the application of the exception that is at issue here.
In essence, we are called upon to determine whether the award of punitive damages in excess of the statutory cap overcomes the legislative presumption of excessiveness.[5] Under Florida law, the purpose of punitive damages is not to further compensate the plaintiff, but to punish the defendant for its wrongful conduct and to deter similar misconduct by it and other actors in the future. See W.R. Grace & Co.-Conn. v. Waters, 638 So.2d 502, 504 (Fla.1994); see also White Constr. Co., Inc. v. Dupont, 455 So.2d 1026, 1028 (Fla.1984); St. Regis Paper Co. v. Watson, 428 So.2d 243, 247 (Fla.1983). In White Construction Co., we reaffirmed the standard necessary to justify the imposition of punitive damages:
The character of negligence necessary to sustain an award of punitive damages must be of a "gross and flagrant character, evincing reckless disregard of human life, or of the safety of persons exposed to its dangerous effects, or there is that entire want of care which would raise the presumption of a conscious indifference to consequences, or which shows wantonness or recklessness, or a grossly careless disregard of the safety and welfare of the public, or that reckless indifference to the rights of others which is equivalent to an intentional violation of them".
455 So.2d at 1029 (quoting Carraway v. Revell, 116 So.2d 16, 20 n. 12 (Fla.1959)). Hence, punitive damages are appropriate when a defendant engages in conduct which is fraudulent, malicious, deliberately violent or oppressive, or committed with such gross negligence as to indicate a wanton disregard for the rights and safety of others.[6]See Waters, 638 So.2d at 503; Chrysler Corp. v. Wolmer, 499 So.2d 823 (Fla.1986); White Constr. Co., 455 So.2d at 1028-29.
The decision whether to award punitive damages and the amount that should be awarded have traditionally been questions for the jury to determine. See Wackenhut Corp. v. Canty, 359 So.2d 430 (Fla.1978). In Wackenhut, we observed:
The court is to decide at the close of the evidence whether there is a legal basis for recovery of punitive damages shown *487 by any interpretation of the evidence favorable to the plaintiff.... Once the court permits the issue of punitive damages to go to the jury, the jury has the discretion whether or not to award punitive damages and the amount which should be awarded. Punitive damages "are peculiarly left to the discretion of the jury as the degree of punishment to be inflicted must always be dependent on the circumstances of each case, as well as upon the demonstrated degree of malice, wantonness, oppression, or outrage found by the jury from the evidence."
Id. at 435-36 (first emphasis added) (quoting Winn & Lovett Grocery Co. v. Archer, 126 Fla. 308, 171 So. 214, 221 (1936)). Of course, the statutory scheme under review here mandates increased scrutiny of punitive damage awards. In this case, Owens-Corning argues that the jury verdict award which exceeded three times the statutory cap is clearly excessive under the statutory scheme and, therefore, remittitur or a new trial is in order.
Initially, we note that before submitting the case to the jury, the trial court properly instructed the jury on a number of relevant factors it could consider in aggravation and mitigation in determining what, if any, amount of punitive damages to impose. Those factors are set out above, and Owens-Corning does not challenge these factors.
Further, and most importantly, we note that in denying Owens-Corning's posttrial motions for new trial and remittitur the trial court provided a well-reasoned and detailed order in accordance with the statutory scheme set out in section 768.73(1). That order speaks for itself:
The clear and convincing evidence in this case revealed that for more than thirty (30) years Owens-Corning concealed what it knew about the dangers of asbestos. In fact, Owens-Corning's conduct was even worse than concealment, it also included intentional and knowing, misrepresentations concerning the danger of its asbestos containing product, Kaylo. For instance, in 1956, Owens-Corning, after having been told by the Saranac Laboratory that Kaylo dust was "toxic", and that asbestos was a carcinogen, advertised Kaylo as being "non-toxic". In 1972, after Owens-Corning developed an asbestos free version of the Kaylo product, Owens-Corning knowingly and intentionally contaminated the new product with asbestos containing debris from its old Kaylo, and then intentionally and knowingly claimed falsely that the new Kaylo product was asbestos free. This was done despite Owens-Corning's knowledge that even slight exposures to asbestos in Kaylo could cause mesothelioma, as it did in this case, an always fatal cancer of the lining of the chest wall.
In addition to the acts noted above, in 1962 Owens-Corning also refused to market an asbestos free product known as GPL-400 in place of Kaylo. The clear and convincing evidence showed that although Owens-Corning knew that GPL-400 was not as dangerous as Kaylo, Owens-Corning refused to market GPL-400 because it was not as profitable as Kaylo. The uncontradicted evidence also demonstrated that from 1964 through 1966, Owens-Corning, despite its actual knowledge concerning the danger of its product Kaylo, refused to warn consumers of those dangers. The clear and convincing evidence further showed that in the late 1960's, Owens-Corning elected not to make any significant effort to remove asbestos from Kaylo despite the fact that they knew that the asbestos in Kaylo would cause caner [sic]. The clear and convincing evidence revealed that Owens-Corning refused to make any such effort in the late 1960's because the removal of asbestos from Kaylo at that time did not offer any sales growth potential.
The uncontradicted evidence was that the net worth of Owens-Corning is approximately $2.5 Billion. The uncontradicted *488 evidence was that only $182 million has been paid by Owens-Corning for resolution of 179,000 prior asbestos claims during the period of 1966 through 1996. The uncontradicted evidence at trial was that Owens-Corning did not know how much, if any, money it had paid for the misconduct proven in this case. The uncontradicted evidence in this case was that Owens-Corning's past and future liability in asbestos cases would have no significant impact upon the corporation. Greg Peterson, an Owens-Corning employee, testified that an award of $10 million in punitive damages in this case would not significantly impact Owens-Corning.
In essence, the trial court concluded that based on Owens-Corning's $2.5 billion net worth and the serious nature of their misconduct involving substantial harm to persons exposed to its products, clear and convincing evidence existed "to support the $31 million punitive damages award rendered by the jury in this case."
We conclude that the district court properly reviewed the trial court's findings in light of the statutory scheme and applied the appropriate standard of review on appeal. In Lassiter v. International Union of Operating Engineers, 349 So.2d 622 (Fla.1977), we held that in such cases appellate courts may review a trial court's ruling "only for an abuse of discretion":
Two factors unite to favor a very restricted review of an order denying a motion for new trial on ground of excessive verdict. The first of these is the deference due the trial judge, who has had the opportunity to observe the witnesses and to consider the evidence in the context of a living trial rather than upon a cold record. The second factor is the deference properly given to the jury's determination of such matters of fact as the weight of the evidence and the quantum of damages.
349 So.2d at 627. In particular, here we recognize the district court was obligated to decide whether the trial court had properly applied the statutory scheme set out in section 768.73(1) in determining whether there had been an abuse of discretion. It is apparent on the face of the opinion that the district court carefully considered the statutory scheme and reviewed the evidence in relation to the trial court's legal analysis and findings in this case. Accordingly, we find no error in the district court's review.[7]
Upon our review of the record, we too can find no error in the trial court's analysis and conclusion that the evidence at trial reasonably supported a finding by the trier of fact of a flagrant disregard for the safety of those persons exposed to Kaylo, the product Owens-Corning knew contained dangerous and toxic materials. The trial court concluded that there was evidence presented to the jury that even after Owens-Corning was informed of Kaylo's cancer-causing effect, it refused to discontinue producing Kaylo or switch to a less injurious product. Based on this evidence of Owens-Corning's apparent indifference to the health and safety of those persons, including Ballard, who used Kaylo, we find *489 that the trial court acted properly and responsibly under section 768.73(1) in determining that the punitive damages award in this case properly fell within the exception to the statutory cap.
Indeed, it would appear that this case presents the precise kind of circumstances contemplated by the Legislature in providing for an exception. The Legislature, by providing for the exception, clearly contemplated that there would be circumstances that justified an award above the statutory presumption. Further, it would be difficult to envision a more egregious set of circumstances than those found herein by the trial court to constitute a blatant disregard for human safety involving large numbers of people put at life-threatening risk. Obviously, our society places a high value on human life and safety. Given the clear and convincing evidence of the nature and magnitude of the risk of harm to human life found here, we find no abuse of discretion in the trial court's order approving the jury's award, or in the district court's review of that order.
We recognize that the Legislature recently amended section 768.73. See Ch. 99-225, § 23, Laws of Fla. (enacted into law May 26, 1999). Under the new version of the statute, punitive damages awards may not exceed three times the amount of compensatory damages or $500,000. The only exceptions to this statutory cap appear to be where the defendant's conduct was motivated by unreasonable financial gain[8] or where the defendant intended to harm the plaintiff.[9] The new law also appears to protect defendants[10] who have been subjected to punitive damages awards in the past; under the amended version of the law, punitive damages may not be awarded against such defendants unless the court finds by clear and convincing evidence that the prior awards were insufficient to punish the defendant. The amendments to the law, however, do not take effect until October 1, 1999. See Ch. 99-225, § 36. Therefore, the recent amendments to section 768.73 do not affect the result we reach in this case.[11]
Accordingly, finding no error in the district court's review or its interpretation or application of the statutory scheme, we approve the decision below.
It is so ordered.
HARDING, C.J., and SHAW, WELLS and PARIENTE, JJ., concur.
OVERTON, Senior Justice, dissents with an opinion.
OVERTON, Senior Justice, dissenting.
The punitive damage issues in this case are significant and have major public policy ramifications. This was the largest punitive damage verdict awarded by Florida courts, and what is significant to me is that this punishment, by way of punitive damages, is awarded to a nonresident of this state for conduct by the defendant that occurred outside this state.
The relevant facts in this case reflect that the plaintiff Ballard, a nonresident of Florida, brought this action against Owens-Corning alleging he had been exposed to Kaylo during the 1960s and 1970s in six separate states, but not in Florida. This case proceeded to a bifurcated jury trial in January of 1997. In the negligence phase, the jury found that Owens-Corning was *490 negligent and strictly liable to Ballard for selling Kaylo. It assessed compensatory damages to him in the amount of $1.8 million and determined that Owens-Corning also was liable for punitive damages. At this point, Owens-Corning immediately moved for a directed verdict on punitive damages, arguing it could not be punished for conduct outside of Florida. That motion was eventually denied by the trial court. In the punitive damage punishment phase, the plaintiff Ballard presented evidence as to the company's financial position, and Owens-Corning testified as to the small profits from Kaylo sales and the financial burdens placed on the company by a deluge of asbestos claims. The jury awarded $31 million in punitive damage claims.
Section 768.73, Florida Statutes (1995), entitled "Punitive damages; limitation" is implicated in this case. That statutory section provides in pertinent part:
(1)(a) In any civil action based on negligence, strict liability, products liability, misconduct in commercial transactions, professional liability, or breach of warranty, and involving willful, wanton, or gross misconduct, the judgment for the total amount of punitive damages awarded to a claimant may not exceed three times the amount of compensatory damages awarded to each person entitled thereto by the trier of fact, except as provided in paragraph (b). However, this subsection does not apply to any class action.
(b) If any award for punitive damages exceeds the limitation specified in paragraph (a), the award is presumed to be excessive and the defendant is entitled to remittitur of the amount in excess of the limitation unless the claimant demonstrates to the court by clear and convincing evidence that the award is not excessive in light of the facts and circumstances which were presented to the trier of fact.

(Emphasis added.)
It may be a justiciable issue as to whether the exception in this statute applies to this award under this evidence. However, more important to me is the fact that I find this State through its judicial branch has absolutely no constitutional authority or jurisdiction to impose the penalty of punitive damages for the benefit of a nonresident of Florida for a defendant's conduct that occurred outside this state. We have no more authority to impose punitive damages in this case than we have to impose a criminal sentence for a crime that occurred in the state of Georgia.
NOTES
[1] Owens-Corning immediately moved for a directed verdict on the punitive damages claim, arguing for the first time that it could not be punished for conduct outside of Florida. The trial court initially reserved ruling on that issue and later denied the motion during posttrial proceedings.
[2] The district court also held that the punitive damages award was proper in this case despite the fact that the injury causing conduct did not occur in the state of Florida. In so holding, the court distinguished BMW of North America, Inc. v. Gore, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), which held that a state may not impose economic sanctions against violators of its laws to induce other states to change their laws. The court held that because Owens-Corning's conduct was unlawful in all fifty states, the "same due process concerns implicated in BMW do not arise." Ballard, 739 So.2d at 608. The parties have not raised the propriety of this ruling on appeal.
[3] Although we accepted review in this case, the certified question appears to be more of a request for our approval of the conclusion reached by the court below than an issue involving great public importance. In most cases we would discourage district courts from asking for this kind of check on its decision as a question of great public importance. Arguably, however, the nature of the claim here and the amount awarded justify review. Therefore, we retain jurisdiction and answer the certified question in the affirmative.
[4] Although it is not defined in the statute, this Court defines the standard "clear and convincing evidence" as "an intermediate level of proof [that] entails both a qualitative and quantitative standard. The evidence must be credible; the memories of the witnesses must be clear and without confusion; and the sum total of the evidence must be of sufficient weight to convince the trier of fact without hesitancy." In re Adoption of Baby E.A.W., 658 So.2d 961, 967 (Fla.1995).
[5] We note that none of the parties in this case have raised the constitutionality of the amount of punitive damages awarded in this case.
[6] We decline to consider Owens-Corning's argument that plaintiffs must show actual malice or a level of intent similar to that required to prove an intentional tort because this argument was not presented to the trial court, nor was it mentioned in the opinion by the court below. Because this argument was not the specific ground asserted before the trial court, it may not be raised for the first time on appeal. See Archer v. State, 613 So.2d 446, 448 (Fla.1993).
[7] We decline to address Owens-Corning's second issue on appeal, that of forum nonconveniens, as it is beyond the scope of the certified question in this case. The district court also correctly refused to consider Owens-Corning's argument that the punitive award should be mitigated by the fact it has paid punitive awards in past claims because no evidence of those past awards was presented in the trial court. While punitive awards in other cases is a proper factor for juries to consider in deciding the amount of punitive damages to award, the burden rests on the defendant to produce such evidence during the punitive portion of the bifurcated trial proceedings. See Waters, 638 So.2d at 506. Owens-Corning did not present to the trier of fact any evidence as to the amount it has paid for past punitive awards; rather, Owens-Corning presented evidence as to the total amount paid in resolving asbestos-related claims without specifying whether such payments represented compensatory or punitive damages. Thus, it should not be permitted to present for the first time on appeal evidence as to the amount of punitive damages paid in the past. See Archer, 613 So.2d at 448.
[8] In such cases, plaintiffs may recover an award amount up to four times the compensatory damages awarded or $2 million.
[9] The Legislature has placed no cap on punitive damages awards where the defendant specifically intended to harm the plaintiff and the defendant's conduct did in fact harm the plaintiff.
[10] The Legislature appears to create an exception for those defendants who fall within subsection (b) of the amended statute.
[11] In referencing the recent legislative amendments to section 768.73, our sole purpose is to note the existence of the amendments, and we offer no opinion on the substantive nature of the amended law.