# Third District Court of Appeal

## State of Florida

Opinion filed November 10, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D22-913
Lower Tribunal No. 20-15859
_____

## Grove Isle Association, Inc.,
Appellant,

vs.

## Jerry M. Lindzon,
Appellee.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, David C. Miller, Judge.

Law Offices of Geoffrey B. Marks, and Geoffrey B. Marks, for appellant.

Halpern Rodriguez, LLP, and Priscilla S. Zaldivar and Marc A. Halpern, for appellee.

Before EMAS, LINDSEY and GORDO, JJ.

EMAS, J.

**INTRODUCTION**

Grove Isle Association, Inc. (the Association), appeals a nonfinal order granting Jerry M. Lindzon's motion for leave to amend his complaint to assert a claim for punitive damages.[1] Because Lindzon failed to satisfy the requirements for establishing entitlement to assert a claim for punitive damages against a corporation pursuant to section 768.72, Florida Statutes (2022), the trial court erred in granting Lindzon's motion to amend, and we therefore reverse.

**FACTUAL AND PROCEDURAL BACKGROUND**

Lindzon owns a unit at Grove Isle Condominium. He alleges his unit suffered severe water damage due to a failing roof assembly. After the Association allegedly ignored his complaints about the failing roof, Lindzon sued the Association for violation of the Declaration of Condominium and under section 718.113(1) for failing to maintain the common elements at Grove Isle.

---

[1] Florida Rule of Appellate Procedure 9.130 authorizes interlocutory appeals of certain enumerated nonfinal orders. In 2022, the Florida Supreme Court amended that rule to add nonfinal orders that "grant or deny a motion for leave to amend to assert a claim for punitive damages." Fla. R. App. P. 9.130(a)(3)G. See In re Amendment to Florida Rule of Appellate Procedure 9.130, 345 So. 3d 725, 726 (Fla. 2022).

The roof was repaired during the pending litigation. However, when Lindzon began to repair the damage to his own unit, his contractor discovered exposed rebar. This discovery, and the parties' attempt to address the newly discovered damage, led to the underlying motion to amend the complaint to assert a claim for punitive damages. In his amended complaint, Lindzon added counts for negligence and fraudulent misrepresentation, and sought punitive damages. He also described the following sequence of events:

- The reroofing project began in March 2021, after the underlying lawsuit was filed.

- In October 2021, the re-roofing project was completed, and Lindzon hired a contractor to restore his unit.

- In November 2021, Lindzon's contractor "discovered multiple areas on the common element slab surrounding the Unit with exposed, rusted rebar, spalling and cracked concrete." Lindzon twice notified the Association about specific areas of damage to the concrete slab, and each time "the Association inspected the Unit."

- "On January 31, 2022, the Association's own contractor confirmed that the work to be performed by the Association include[d] repairs to

3

rebar which require[d] input from a structural engineer and proper permitting."

- Rodriguez eventually advised Lindzon that work on the slab was set to commence on February 7.

- Days before the work was set to commence, Lindzon requested a copy of the scope of work and permit information. Upon receiving the request, Rodriguez stated: "[i]t's such a small job that I don't think it's [permits] really necessary."

- When Lindzon insisted on a copy of the scope of work and permit information, Rodriguez canceled the work, stating that "he instructed his contractor to proceed without a permit, and now that Lindzon requested it, the repairs would be significantly delayed."[2]

In sum—and relevant to the asserted punitive damages claim— Lindzon alleged: "In an effort to save money, the Association was not intending to retain a structural engineer or pull the necessary permits to

---

[2] The email from Rodriguez to Lindzon's attorney (attached to the motion to amend) specifically stated: "The contractor did not say that a permit is not required. I am the one that told the contractor that in order to expedite this I would not be requiring a permit. [] If you feel that a permit is necessary then we will go ahead and start the process. This process wit[h] the current backlog with the City of Miami due to Covid will delay this repair for a couple of months while a permit is obtained . . . ."

4

perform the repairs to the slab contrary to the advice of the Association's own contractor."

Attached to the motion to amend were the letters to the Association, and the correspondence between the Association contractor and Rodriguez.

Following a hearing, the trial court granted Lindzon's motion to amend, concluding that "the proffered misrepresentation regarding the lack of need for a building permit, the willful neglect to get a building permit in the face of expert advice to do [so] evidences a willful and wanton disregard of the Plaintiff[']s rights and safety."  This appeal followed.

## STANDARD OF REVIEW

The parties agree that our standard of review is de novo.  Tallahassee Mem'l Healthcare, Inc. v. Dukes, 272 So. 3d 824 (Fla. 1st DCA 2019) (reviewing de novo the trial court's decision of whether a party should be allowed to plead punitive damages); Est. of Williams ex rel. Williams v. Tandem Health Care of Fla., Inc., 899 So. 2d 369, 376 (Fla. 1st DCA 2005). See also E.R. Truck & Equip. Corp. v. Gomont, 300 So. 3d 1230 (Fla. 3d DCA 2020) (Scales, J. concurring).

## DISCUSSION AND ANALYSIS

The Association contends that (1) Lindzon "failed to meet the requirements of alleging and proving entitlement to pleading a claim for

5

punitive damages against a corporation"; and (2) because the amended complaint does not allege acts independent of its contractual and statutory claims, amendment to the complaint was barred by the independent tort doctrine. We agree with the Association's first contention and reverse the order granting leave to amend to assert a claim for punitive damages.[3]

"Under Florida law, the purpose of punitive damages is not to further compensate the plaintiff, but to punish the defendant for its wrongful conduct and to deter similar misconduct by it and other actors in the future." Owens–Corning Fiberglas Corp. v. Ballard, 749 So. 2d 483, 486 (Fla. 1999). See also BDO Seidman, LLP v. Banco Espirito Santo Intern., 38 So. 3d 874, 876 (Fla. 3d DCA 2010) ("Punitive damages are a form of extraordinary relief for acts and omissions so egregious as to jeopardize not only the particular plaintiff in the lawsuit, but the public as a whole, such that a punishment—

---

[3] As a result, we do not reach the merits of the second issue raised on appeal by the Association. See Peebles v. Puig, 223 So. 3d 1065, 1069 (Fla. 3d DCA 2017) ("When, as here, a contract has been breached, a tort action lies only for acts independent of those acts establishing the contract's breach") (citing Ginsberg v. Lennar Fla. Holdings, Inc., 645 So. 2d 490, 494 (Fla. 3d DCA 1994) ("It is well established that breach of contractual terms may not form the basis for a claim in tort. Where damages sought in tort are the same as those for breach of contract a plaintiff may not circumvent the contractual relationship by bringing an action in tort")); TRG Desert Inn Venture, Ltd. v. Berezovsky, 194 So. 3d 516, 519 n.3 (Fla. 3d DCA 2016) ("Florida's independent tort rule precludes the recovery of punitive damages for a breach of contract claim unless the claimant has asserted a tort independent of the alleged breach of contract.")

not merely compensation—must be imposed to prevent similar conduct in the future.")

Florida courts have repeatedly described the substantial impact of granting a motion for leave to amend to assert a claim for punitive damages. See, e.g., TRG Desert Inn Venture, Ltd. v. Berezovsky, 194 So. 3d 516, 520 n.5 (Fla. 3d DCA 2016) ("From a practical perspective, the granting of a motion for leave to amend a complaint to add a punitive damages claim can be a 'game changer' in litigation.") For instance, once a plaintiff is allowed to proceed with his punitive damages claim, the defendant becomes subject to financial discovery and, potentially, to uninsured losses. Id.; see also Est. of Despain v. Avante Grp., Inc., 900 So. 2d 637, 641 (Fla. 5th DCA 2005) ("[A]lthough section 768.72(1) is procedural in nature, it also provides a substantive right to parties not to be subjected to a punitive damage claim and attendant discovery of financial worth until the requisite showing under the statute has been made to the trial court".) For these reasons, "punitive damages are reserved for truly culpable behavior and are intended to express society's collective outrage." KIS Grp., LLC v. Moquin, 263 So. 3d 63, 65-66 (Fla. 4th DCA 2019) (quotation omitted).

Section 768.72, Florida Statutes (2022), governs a plaintiff's ability to bring a punitive damages claim. It provides that "no claim for punitive

damages shall be permitted unless there is a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages." § 768.72(1), Fla. Stat. <u>See also</u> <u>Dukes</u>, 272 So. 3d at 825 ("A defendant has a substantive legal right not to be subject to punitive damages claims if there is no reasonable basis for recovery.") A trial court's determination as to whether a plaintiff has made a "reasonable showing" under section 768.72 for a recovery of punitive damages, "is similar to determining whether a complaint states a cause of action, or the record supports a summary judgment, both of which are reviewed de novo." <u>Holmes v. Bridgestone/Firestone, Inc.</u>, 891 So. 2d 1188, 1191 (Fla. 4th DCA 2005). The statute further provides that a defendant can be held liable for punitive damages only if the trier of fact finds, by clear and convincing evidence, "that the defendant was personally guilty of intentional misconduct or gross negligence." § 768.72(2), Fla. Stat. The statute defines those two terms:

> (a) "Intentional misconduct" means that the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage.

> (b) "Gross negligence" means that the defendant's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct.

8

§ 768.72(2)(a)-(b), Fla. Stat.

Here, Lindzon sues only the Association; Rodriguez is not a defendant in the action. Coronado Condo. Ass'n, Inc. v. La Corte, 103 So. 3d 239, 240 n.1 (Fla. 3d DCA 2012) ("La Corte did not sue the individual property managers or the contractor repairing the balconies; the Association is the sole defendant.") Therefore, in seeking punitive damages, Lindzon necessarily intends to impute the property manager's alleged intentional misconduct or gross negligence to the Association. To impute an employee's negligence or misconduct to the employer under the punitive damages statute, a plaintiff must establish the employee's conduct meets the criteria specified in subsection (2) above (i.e., that the employee was "guilty of intentional misconduct or gross negligence") **and** establish one of the following:

> (a) The employer, principal, corporation, or other legal entity actively and knowingly participated in such conduct;
>
> (b) The officers, directors, or managers of the employer, principal, corporation, or other legal entity knowingly condoned, ratified, or consented to such conduct; or
>
> (c) The employer, principal, corporation, or other legal entity engaged in conduct that constituted gross negligence and that contributed to the loss, damages, or injury suffered by the claimant.

§ 768.72(3)(a)-(c), Fla. Stat.

Lindzon's amended complaint fails to satisfy any of the three alternative requirements of subsection (3)(a)-(c). "A corporate employer, like an individual employer, may be held liable for punitive damages based on the legal theories of either direct or vicarious liability." Est. of Despain, 900 So. 2d at 640. Here, the amended complaint does not specify whether Lindzon's claim for punitive damages was based on direct or vicarious liability. And a review of the negligence and fraudulent misrepresentation claims (for which punitive damages is sought) reveals no allegation of wrongdoing by the Association. Instead, the amended complaint alleges misconduct only by Rodriguez (while using the broad term "Association" to characterize the "perpetrator" of such conduct). Additionally, the correspondence Lindzon attached to the amended complaint shows that all communications pertaining to the permit were between Lindzon's counsel and Rodriguez. There are no separate, independent allegations in the complaint setting forth any actions taken by an Association officer, director or managing member.[4] See, e.g., Fetlar, LLC v. Suarez, 230 So. 3d 97, 100

---

[4] Ironically, the trial court indicated that its ruling (permitting the amendment to assert punitive damages) was based in part on the fact that no building permit was obtained even "in the face of expert advice to do so." That "expert advice" came from the Association's contractor who, as described earlier, took the position (contrary to Rodriguez) that a building permit was needed before undertaking the repairs.

10

(Fla. 3d DCA 2017) ("The plaintiffs assume that the alleged misconduct of the individual construction managers, superintendents, construction workers—*who were not, on the record before us, officers or managing members of the limited liability companies*—is, without more, misconduct of the four corporate petitioner/defendants for purposes of section 768.72. But that is contrary to the plain language of the statute") (emphasis added); La Corte, 103 So. 3d at 240-41 (holding that the third amended complaint failed to comply with the procedural requirements of section 768.72: "There are references in the third amended complaint to a single, unnamed 'Association board member,' but *those references do not allege the Association's active, knowing participation in, or consent to, misconduct by the property management or contractor's employees*") (emphasis added).

For these reasons, a vicarious liability theory suffers a similar fate. "In order to hold a corporate employer vicariously liable for punitive damages for the acts of its employees, the plaintiff must establish: (1) fault on the part of the employee that rises to the level of willful and wanton misconduct and (2) *some fault on the part of the corporate employer that rises to the level of at least ordinary negligence*." Est. of Despain, 900 So. 2d at 640-41 (emphasis added). As explained above, the absence of any allegations or record evidence showing even simple negligence on the part of the

11

Association compels the conclusion that Lindzon has failed to meet the heightened evidentiary standard for imposition of punitive damages on an employer. Compare id. at 645 (finding a reasonable basis to assert a claim for punitive damages based on vicarious liability: "As to the vicarious liability of the corporate entities, the record evidence and proffer shows that the facility was not adequately staffed, which contributed to the inability to provide the decedent with proper care, and that numerous records regarding the decedent's care were incomplete, missing, or had been fabricated, which made assessment, treatment, and referrals of the decedent much more difficult.")[5]

---

[5] In light of our analysis (together with the fact that Rodriguez is not a named defendant), we do not reach the question of whether the misconduct alleged might provide a reasonable basis for asserting a punitive damages claim against Rodriguez individually. See Valladares v. Bank of Am. Corp., 197 So. 3d 1 (Fla. 2016) (citing U.S. Concrete Pipe Co. v. Bould, 437 So. 2d 1061, 1064 (Fla.1983) ("Punitive damages cannot be assessed for mere negligent conduct, but must be based on behavior which indicates a wanton disregard for the rights of others")); Owens–Corning Fiberglas Corp. v. Ballard, 749 So. 2d 483, 486 (Fla.1999) ("The character of negligence necessary to sustain an award of punitive damages must be of a gross and flagrant character, evincing reckless disregard of human life, or of the safety of persons exposed to its dangerous effects, or there is that entire want of care which would raise the presumption of a conscious indifference to consequences, or which shows wantonness or recklessness, or a grossly careless disregard of the safety and welfare of the public, or that reckless indifference to the rights of others which is equivalent to an intentional violation of them") (quotation omitted). See also Carraway v. Revell, 116 So. 2d 16, 18-19 (Fla. 1959) ("[T]he character of negligence necessary to sustain

12

**CONCLUSION**

Because Lindzon failed to satisfy the requirements for establishing entitlement to assert a claim for punitive damages against a corporation pursuant to section 768.72, Florida Statutes (2022), the trial court erred in granting Lindzon's motion to amend.  We therefore reverse and remand for further proceedings consistent with this opinion.

---

a conviction for manslaughter is the same as that required to sustain a recovery for punitive damages . . . .")