# Third District Court of Appeal

## State of Florida

Opinion filed August 2, 2023.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D22-1534
Lower Tribunal No. 16-21186
_____

**Gary I. Manheimer,**
Appellant,

vs.

**Florida Power & Light Company, etc.,**
Appellee.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, Antonio Arzola, Judge.

Egozi & Bennett, P.A., Bernard L. Egozi and Joshua S. Olin, for appellant.

Gunster, Yoakley & Stewart, P.A., Michael B. Green and Lauren V. Purdy, for appellee.

Before SCALES, LINDSEY and GORDO, JJ.

GORDO, J.

Gary I. Manheimer appeals an order denying his motion for leave to amend his complaint to add a claim for punitive damages. We have jurisdiction. Fla. R. App. P. 9.130(a)(3)(G). Because Manheimer failed to make a reasonable showing through record evidence that Florida Power & Light Company ("FPL") engaged in intentional misconduct or gross negligence, as required pursuant to the plain language of section 768.72, Florida Statutes, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In October 1999, FPL obtained an easement to install an underground powerline on the eastern property line of 1431 W. 24th Street, Miami Beach, Florida ("1431 Property"). The powerline was installed via boring technology. Manheimer purchased the property next door to the 1431 Property in July 2003 via warranty deed.

On April 28, 2016, contractors digging up the street in front of Manheimer's property accidentally struck an underground powerline. Because of this incident, the powerline was tripped, and FPL received a digital notification that the powerline was "off line"—meaning it might not be where it was supposed to be. After an initial investigation into the incident, FPL learned the powerline might be on or near Manheimer's property. The exact location of the powerline, however, remained unclear. After

2

Manheimer received notice the powerline was potentially on his property, he demanded FPL immediately remove it. Because no survey of the property had been conducted, neither party was aware of the exact location of the powerline or even if it was necessarily on Manheimer's property.

On August 15, 2016, Manheimer filed a complaint against FPL for ejectment and declaratory judgment. FPL timely filed an answer and affirmative defenses including its rights to possession of the property as a public utility with condemnation authority. Three years later, Manheimer filed an amended complaint adding a claim for unjust enrichment. FPL responded with another answer and affirmative defenses, now additionally asserting its eminent domain authority pursuant to section 361.01, Florida Statutes, as a regulated public utility and noting the sole remedy Manheimer was entitled to was compensation. While the litigation was ongoing, Manheimer demolished his existing home and built another on the property. As a remedy for his allegations, Manheimer sought removal of the powerline as well as approximately $27 million in damages based solely on the powerline's encroachment on his property.

Between the first complaint and amended complaint, FPL conducted an investigation and survey of Manheimer's property regarding the location of the powerline. FPL discovered that unbeknownst to its workers, the bore

3

shifted during the installation process causing the powerline to mistakenly enter Manheimer's property. The powerline was found to be located 2.3 feet onto Manheimer's property at its furthest encroachment point and was buried between fifteen and forty feet below the ground.

In May 2022, Manheimer filed a motion for leave to amend his complaint to add a claim for punitive damages pursuant to section 768.72. The sum of Manheimer's argument was that once FPL learned of the trespass in April 2016, its decision not to remove the powerline from Manheimer's property was intentional misconduct and gross negligence. FPL filed a motion in opposition asserting that punitive damages were unwarranted as there was no evidence FPL intentionally committed trespass on Manheimer's property and Manheimer suffered no injury due to the powerline.

The trial court held a hearing on the motion and later entered an order denying Manheimer's motion finding the evidence presented did not constitute a reasonable showing under section 768.72. This appeal followed.

## STANDARD OF REVIEW

"We review de novo the trial court's purely legal ruling that plaintiff made a 'reasonable showing' under section 768.72 to recover punitive

4

damages." Cleveland Clinic Florida Health Sys. Nonprofit Corp. v. Oriolo, 357 So. 3d 703, 705 (Fla. 4th DCA 2023) (quoting Holmes v. Bridgestone/Firestone, Inc., 891 So. 2d 1188, 1191 (Fla. 4th DCA 2005)); see also Grove Isle Ass'n, Inc. v. Lindzon, 350 So. 3d 826, 829 (Fla. 3d DCA 2022).

## LEGAL ANALYSIS

"Punitive damages are a form of extraordinary relief for acts and omissions so egregious as to jeopardize not only the particular plaintiff in the lawsuit, but the public as a whole, such that a punishment—not merely compensation—must be imposed to prevent similar conduct in the future." BDO Seidman, LLP v. Banco Espirito Santo Int'l, 38 So. 3d 874, 876 (Fla. 3d DCA 2010). "Under Florida law, the purpose of punitive damages is not to further compensate the plaintiff, but to punish the defendant for its wrongful conduct and to deter similar misconduct by it and other actors in the future." Owens–Corning Fiberglas Corp. v. Ballard, 749 So. 2d 483, 486 (Fla. 1999). "[P]unitive damages are reserved for truly culpable behavior and are intended to 'express society's collective outrage.'" KIS Grp., LLC v. Moquin, 263 So. 3d 63, 65–66 (Fla. 4th DCA 2019) (quoting Imperial Majesty Cruise Line, LLC v. Weitnauer Duty Free, Inc., 987 So. 2d 706, 708 (Fla. 4th DCA 2008)).

In Florida, section 768.72 authorizes and governs punitive damages. Pursuant to section 768.72(2), "[a] defendant may be held liable for punitive damages only if the trier of fact, based on clear and convincing evidence, finds that the defendant was personally guilty of intentional misconduct or gross negligence." Section 768.72(2) defines intentional misconduct and gross negligence as:

> (a) "Intentional misconduct" means that the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage.

> (b) "Gross negligence" means that the defendant's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct.

§ 768.72(2)(a)-(b), Fla. Stat.

No claim for punitive damages, however, may proceed "unless there is a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages." § 768.72(1), Fla. Stat. A plaintiff is required to make this reasonable showing because "[f]rom a practical perspective, the granting of a motion for leave to amend a complaint to add a punitive damages claim can be a 'game changer' in litigation. Allowing a plaintiff to proceed with a punitive damages claim

6

subjects the defendant to financial discovery that would otherwise be off limits . . . and potentially subjects the defendant to uninsured losses." TRG Desert Inn Venture, Ltd. v. Berezovsky, 194 So. 3d 516, 520 n.5 (Fla. 3d DCA 2016); see also Est. of Despain v. Avante Grp., Inc., 900 So. 2d 637, 641 (Fla. 5th DCA 2005) ("[A]lthough section 768.72(1) is procedural in nature, it also provides a substantive right to parties not to be subjected to a punitive damage claim and attendant discovery of financial worth until the requisite showing under the statute has been made to the trial court."). The importance of financial discovery cannot be overstated. As a result, the Florida Supreme Court recently amended Florida Rule of Appellate Procedure 9.130 to authorize appeals of nonfinal orders on motions for leave to amend to assert a claim for punitive damages. See In re Amend. to Fla. R. of App. P. 9.130, 345 So. 3d 725, 725–26 (Fla. 2022).

Because punitive damages are meant to be reserved for the most egregious of cases and have substantial impacts to the parties, section 768.72 "requires the trial court to act as a gatekeeper and preclude[ ] a claim for punitive damages where there is no reasonable evidentiary basis for recovery." Bistline v. Rogers, 215 So. 3d 607, 611 (Fla. 4th DCA 2017). This means "that the trial court cannot 'simply accept[ ] the allegations in a complaint or motion to amend as true.'" Napleton's N. Palm Auto Park, Inc.

7

v. Agosto, 2023 WL 4095777, at *2 (Fla. 4th DCA June 21, 2023) (quoting Bistline, 215 So. 3d at 610).  A trial court must weigh both parties' showings when considering whether the evidence or proffer is sufficient to establish a reasonable evidentiary basis for recovery of punitive damages.  See Marder v. Mueller, 358 So. 3d 1242, 1246 n.1 (Fla. 4th DCA 2023).  "A trial court's inquiry under section 768.72 is more intensive than at summary judgment because the statute 'necessarily requires the court to weigh the evidence and act as a factfinder.'"  Napleton's, 2023 WL 4095777, at *2 (quoting KIS Grp., 263 So. 3d at 66).

Here, Manheimer asserts he made a reasonable showing through evidence that FPL engaged in both intentional misconduct and gross negligence by failing to remove the powerline from his property after learning of its encroachment.  Review of the undisputed evidence, however, shows that the shifting of the powerline onto Manheimer's property was not intentional and has resulted in no injury to Manheimer other than the alleged trespass itself.  Under Florida law, where the record evidence demonstrates that a trespass was a mistake, there was no unreasonable delay in remedying the mistake and no damage resulted to the plaintiff, the trespass cannot serve as the basis for punitive damages.  See Florida Power & Light Co. v. Walker, 440 So. 2d 659, 660 (Fla. 1st DCA 1983) ("The evidence,

8

however, shows only that the trespass was a mistake. Even when viewed in the light most favorable to appellees, there is nothing in the record to show that Florida Power & Light or its contractor acted with wantonness, actual malice, deliberation, gross negligence, or utter disregard of appellees' property rights."); Florida Power Corp. v. Scudder, 350 So. 2d 106, 109–10 (Fla. 2d DCA 1977) ("Although mistaken and even careless about determining the ownership of the lands where it installed its poles and lines, Florida Power's conduct was not of a wanton character and was certainly not the type of outrageous wrong which warrants imposition of punitive damages."); Horn v. Corkland Corp., 518 So. 2d 418, 420 (Fla. 2d DCA 1988) ("Upon review of the facts in this case, we find the evidence clearly supports the trial judge's finding that the trespass was committed by mistake and not by willful and wanton misconduct on the part of the Corkland or Scarborough. Under such circumstances, this court has held that punitive damages are not appropriate.").

Further, while power companies are held to a higher duty of care, courts have held that punitive damages are only warranted where a company had knowledge of damage or a dangerous condition and chose not to remedy it. See McCain v. Florida Power Corp., 593 So. 2d 500, 504 (Fla. 1992) (noting that power companies "must shoulder a greater-than-usual

9

duty of care in proportion to the greater-than-usual zone of risk associated with the business enterprise they have undertaken."); <u>Otey v. Florida Power & Light Co.</u>, 400 So. 2d 1289, 1291 (Fla. 5th DCA 1981) (finding punitive damages could be awarded where FPL was notified of and asked to repair a dangerous condition but did nothing to remedy the condition in the four years prior to the resulting injury at issue); <u>see also</u> <u>Am. Motors Corp. v. Ellis</u>, 403 So. 2d 459, 468 (Fla. 5th DCA 1981) ("[P]unitive damages have been allowed where the defendant had knowledge of a defect or dangerous condition and chose not to remedy the condition."); <u>Williams v. Florida E. Coast Ry. Co.</u>, 552 So. 2d 279, 281 (Fla. 3d DCA 1989) (reversing the dismissal of a claim for punitive damages where, on the facts alleged, "the jury could find the railroad guilty of wanton misconduct in retaining [a certain employee] with knowledge of [his] accident history and his disdain for human life or safety, or by their failure to institute procedures and regulations designed to prevent such accidents").

Here, the undisputed evidence is that the litigation over the powerline was initiated almost immediately after both parties learned the powerline was potentially on Manheimer's property. Approximately two years of litigation passed without either party even knowing the powerline's exact location, or even if it had improperly encroached on Manheimer's property. Once FPL

learned of the improper shifting of the bore during installation, it acknowledged that Manheimer is entitled to compensation as a remedy for the trespass on his property caused by the powerline. The fact that FPL defended itself in a litigation over its potential rights related to the powerline on Manheimer's property cannot in and of itself form a basis for the imposition of punitive damages.

We commend the trial court for properly exercising its gate keeping function in this case. Pursuant to the plain language of section 768.72, the legislature enacted the section to require a more rigorous assessment of punitive damages claims and prevent gamesmanship. See Cat Cay Yacht Club, Inc. v. Diaz, 264 So. 3d 1071, 1076 (Fla. 3d DCA 2019) (noting that in section 768.72 "the legislature expressly required a more rigorous assessment" before allowing a plaintiff to add a claim for punitive damages). While we recognize unreasonable delay by an intentional trespasser in removing itself after notification by an owner has in extreme cases been found sufficient to convert a negligence claim into a punitive damages claim, that is not the case here. See Kish v. McDonald's Corp., 564 So. 2d 1177, 1179 (Fla. 4th DCA 1990) (finding that punitive damages were warranted where the defendant intentionally trespassed onto the plaintiff's property and later refused to leave after notification by the owner); Pace Prop. Fin. Auth.,

11

Inc. v. Jones, 24 So. 3d 1271, 1272 (Fla. 1st DCA 2009) (noting that punitive damages were awarded "based on damage the appellants caused to the appellees' land, when the appellants repeatedly entered onto the appellees' property and destroyed trees and other vegetation").

FPL may have declined to acquiesce to Manheimer's demand it remove the powerline from his property, but the trial court correctly found FPL did so in the first instance because it was uncertain of the powerline's location and afterwards because of the parties' relative rights currently being litigated in the underlying claims. FPL correctly points out that there is no evidence in the record of any defect, dangerous condition or damage that resulted from the powerline's existence—forty-feet below ground and two-feet onto Manheimer's property. The powerline Manheimer wishes to remove, however, currently provides electricity to more than one hundred homes in the area. The Florida Supreme Court has held that "[t]he conduct required to allege punitive conduct reaches beyond simple negligence." Valladares v. Bank of Am. Corp., 197 So. 3d 1, 11 (Fla. 2016). "[P]unitive damages are [only] appropriate when a defendant engages in conduct which is fraudulent, malicious, deliberately violent or oppressive, or committed with such gross negligence as to indicate a wanton disregard for the rights and safety of others." Owens-Corning Fiberglas Corp., 749 So. 2d at 486; see

12

also <u>U.S. Concrete Pipe Co. v. Bould</u>, 437 So. 2d 1061, 1064 (Fla. 1983) ("Punitive damages cannot be assessed for mere negligent conduct, but must be based on behavior which indicates a wanton disregard for the rights of others.").

While the installation process may have gone awry and caused the powerline to shift unbeknownst to FPL's workers, there is nothing in the record to show that FPL acted with the requisite intentional misconduct or gross negligence by failing to remove the powerline while litigation was ongoing. Considering the absence of such evidence in the record, it is apparent a claim for punitive damages does not lie.

Affirmed.