# FIFTH DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

———————————————

Case No. 5D23-346
LT Case No. 16-2020-CA-000341

———————————————

HOSPITAL SPECIALISTS, P.A.,

    Appellant,

    v.

KATHLEEN DEEN, as personal
representative of the estate of
William Alvin Deen, deceased,
ABDI ABBASSI, M.D. and
DIGESTIVE DISEASE
CONSULTANTS, LLC, a limited
liability company, ET AL.,

    Appellees.

———————————————

Nonfinal Appeal of Order from the Circuit Court for Duval County.
Bruce R. Anderson, Jr., Judge.

Brian M. Pederson and Davis C. Love, of Childs, Hester & Love,
P.A., Jacksonville, for Appellant.

Thomas S. Edwards, Jr., of Edwards & Ragatz, P.A., Jacksonville,
for Appellee, Kathleen Deen, as personal representative of the
estate of William Alvin Deen, deceased.

No Appearance for Other Appellees.

November 21, 2023

LAMBERT, J.

Hospital Specialists, P.A., ("Hospital Specialists") appeals a nonfinal order entered by the trial court granting the motion of Appellee, Kathleen Deen, as personal representative of the estate of William Alvin Deen, deceased, to amend a wrongful death medical malpractice complaint to assert a claim for punitive damages.[1] Concluding that the record evidence and the proffered evidence do not reasonably show that Hospital Specialists engaged in the behavior described and defined in section 768.72(2) and (3), Florida Statutes (2017), as required for the recovery of punitive damages, we reverse.

## BACKGROUND

According to the operative complaint, Hospital Specialists is a Florida professional association providing hospitalist[2] services at St. Vincent's Medical Center ("St. Vincent's") in Jacksonville, Florida. On June 8, 2018, William Alvin Deen presented himself to the emergency room at St. Vincent's complaining of abdominal pain following a colonoscopy. A CT scan of Deen's abdomen revealed that his colon had been perforated, which Appellee asserted was related to the colonoscopy. Deen was then admitted for surgery to repair his colon.

At approximately 8:20 p.m. that same evening, the nurses on duty noted that Deen was hypotensive (had low blood pressure) and drowsy. As Hospital Specialists was providing medical care to Deen while he was a patient in St. Vincent's, the nurses contacted Hospital Specialists' after-hours answering service to inform about Deen's condition. Robert Lancaster, an advanced registered nurse practitioner ("ARNP") who, on an independent contractor basis,

---

[1] We have jurisdiction under Florida Rule of Appellate Procedure 9.130(a)(3)(G).

[2] Hospitalists are specialists in inpatient medicine who work in a hospital. Robert M. Wachter & Lee Goldman, *The Emerging Role of "Hospitalists" in the American Health Care System*, 334, no. 7 New England J. of Med. 514 (1996).

2

provided services on behalf of Hospital Specialists, responded to the call and ordered that Deen be administered an intravenous saline bolus.

Hospital Specialists' next contact regarding Deen was the following morning, June 9th, at approximately 5:45 a.m., when the hospital nursing staff notified Lancaster to advise that Deen was again hypotensive and that he now also had critically elevated troponin[3] levels. An EKG was performed that showed that Deen had suffered an acute myocardial infarction.[4] Lancaster ordered an immediate consult with a cardiologist. Deen was taken to a cardiac catheterization lab where a stent was implanted. He later went into respiratory failure and was intubated. Deen passed away the following morning.

Appellee sued various parties alleging that their negligence resulted in Deen's death. Pertinent here, Appellee alleged that Hospital Specialists was vicariously liable for Lancaster's negligence. She asserted that Lancaster had failed to properly assess and diagnose Deen and that he did not timely and appropriately react thereafter to Deen's symptoms. Appellee alleged that, within a reasonable degree of medical probability, had Deen been provided with the appropriate care, he would not have suffered the myocardial infarction which led to his ultimate death.

Appellee later moved under section 768.72, Florida Statutes, and Florida Rule of Civil Procedure 1.190 to amend her complaint to assert a claim for punitive damages. In the proposed amended

---

[3] Troponin is a complex of three proteins integral to regulating, among other things, the contraction of the cardiac muscle. *See* Johannes Mair et al., *Clinical Significance of Cardiac Contractile Proteins for the Diagnosis of Myocardial Injury*, 31 Advances in Clinical Chemistry 63 (1994).

[4] An acute myocardial infarction is more commonly known as a heart attack. Moussa Saleh & John A. Ambrose, *Understanding Myocardial Infarction*, Nat'l Library of Med. (Sept. 3, 2018), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6124376/.

complaint, Appellee alleged that Hospital Specialists, through its president, Dr. Ateeque Khan, committed acts of intentional misconduct or gross negligence by assigning Lancaster, a nurse practitioner, to provide after-hours care to Deen, a patient with complex health problems that were beyond Lancaster's permissible scope of practice. Appellee further alleged that by doing so, Hospital Specialists violated its own written practice protocol, which limited Lancaster's care of its patients to those with "common health problems," and that, through Dr. Khan, it had thus condoned, ratified, or consented to the alleged grossly negligent care that Lancaster provided to Deen.

The trial court held a hearing on the motion to amend. Medical records, deposition transcripts, and Hospital Specialists' written protocol establishing the framework of the duties between Lancaster and Hospital Specialists were proffered to the court for consideration; however, no live testimony was presented.

In the order granting Appellee's motion, the trial court found that Deen was a patient with complex health problems. It determined that by having Lancaster, instead of Dr. Khan, who was Lancaster's supervising physician, respond to the hospital nursing staff after-hours call regarding Deen's deteriorating condition, Hospital Specialists violated its own written protocol and section 464.012, Florida Statutes, by allowing Lancaster to treat a patient with complex health problems.

The trial court also found that Dr. Khan failed to implement any measures to ensure that either Lancaster or the hospital staff would contact him directly pertaining to Deen's physical condition. The court concluded that Dr. Khan had thus ratified, condoned, and consented to Lancaster's decisions on how best to treat Deen and that Hospital Specialists had actively and knowingly participated in conduct that would warrant punitive damages.

STANDARD OF REVIEW

Our review of a trial court's order on a motion for leave to amend a complaint to assert a claim for punitive damages is de novo. *Werner Enters., Inc. v. Mendez*, 362 So. 3d 278, 281 (Fla. 5th DCA 2023) (citing *Grove Isle Ass'n v. Lindzon*, 350 So. 3d 826, 829

4

(Fla. 3d DCA 2022)); *Fed. Ins. v. Perlmutter*, 48 Fla. L. Weekly D1903 (Fla. 4th DCA Sept. 27, 2023) ("Because the trial court properly did not consider live witness testimony in ruling on the motion [to amend the complaint to assert a claim for punitive damages], our review is de novo." (citing *Cleveland Clinic Fla. Health Sys. Nonprofit Corp. v. Oriolo*, 357 So. 3d 703, 705 (Fla. 4th DCA 2023))). In conducting our de novo review, we consider the record evidence and the proffered evidence in the light most favorable to the plaintiff. *Est. of Blakely by and through Wilson v. Stetson Univ., Inc.*, 355 So. 3d 476, 481 (Fla. 5th DCA 2022) (citing *Est. of Despain v. Avante Grp., Inc.*, 900 So. 2d 637, 644 (Fla. 5th DCA 2005)).

AN OVERVIEW OF PUNITIVE DAMAGES CLAIMS

Section 768.72, Florida Statutes (2017), is titled "Pleading in civil actions; claim for punitive damages." Subsection (1) of this statute provides that no claim for punitive damages in a civil action shall be permitted "unless there is a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages." *See also Globe Newspaper Co. v. King*, 658 So. 2d 518, 519 (Fla. 1995) (explaining that section 768.72 creates a substantive legal right for a party not to be subject to a punitive damages claim unless a trial court first determines that there is a reasonable basis for the recovery of such damages).

Resultingly, a punitive damages claim is not properly pled in the initial complaint; instead, under section 768.72(1), a plaintiff, as allowed by the rules of civil procedure, may move to amend his or her complaint to obtain court approval to assert a claim for punitive damages. Once the motion is filed and set for hearing, the trial court is tasked with being a "gatekeeper" to assess whether the claimant has shown a reasonable evidentiary basis for the recovery of punitive damages. *See Varnedore v. Copeland*, 210 So. 3d 741, 745 (Fla. 5th DCA 2017) (noting that a trial court functions as a gatekeeper when assessing whether a plaintiff's specific claim may justify an award of punitive damages). This gatekeeping obligation similarly tasks the trial court with preventing a party from being subjected to a punitive damages

claim when no reasonable basis for these damages has been shown. *Bistline v. Rogers*, 215 So. 3d 607, 611 (Fla. 4th DCA 2017).

Here, Appellee seeks punitive damages against Hospital Specialists for allowing Lancaster to treat Deen, a patient with highly complex problems. For punitive damages to be imposed against an employer, principal, corporation, or other legal entity for the conduct of one of its employees or agents, the employee or agent's behavior or actions must be of such a nature to constitute "intentional misconduct" or "gross negligence." *See* § 768.72(2)–(3). The term "intentional misconduct" means "that the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage." § 768.72(2)(a). "Gross negligence" is separately defined in the statute as conduct that "was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct." § 768.72(2)(b).

If the conduct of the employee or agent meets either threshold, then, under section 768.72(3), the employer, principal, corporation, or legal entity may be subject to punitive damages if: (1) it actively and knowingly participated in such conduct; (2) its officers, directors, or managers knowingly condoned, ratified, or consented to such conduct; or (3) the officers, directors, or managers engaged in conduct that constituted gross negligence and that contributed to the loss, damages, or injury suffered by the claimant.

Courts are also reminded that when analyzing a motion to amend brought under section 768.72, punitive damages are not intended to be compensation for injury but instead "are private fines levied by civil juries to punish *reprehensible conduct* and to deter its future occurrence." *Perlmutter*, 48 Fla. L. Weekly at D1903 (quoting *Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 432 (2001)). Punitive damages are reserved only for conduct that is "so outrageous in character, and so extreme in degree . . . [that] the facts [of the case] to an average member of the community would arouse his resentment against the actor, and

6

lead him to exclaim, 'Outrageous!'"  *Id.* (alterations in original) (quoting *Oriolo*, 357 So. 3d at 706).

In that vein, the Florida Supreme Court has analogized the requisite level of negligence necessary for the assessment of punitive damages under section 768.72 to that necessary for a conviction for criminal manslaughter. *Valladares v. Bank of Am. Corp.*, 197 So. 3d 1, 11 (Fla. 2016) (citing *Carraway v. Revell*, 116 So. 2d 16, 18–19 (Fla. 1959)). The negligence

> must be of a "gross and flagrant character, evincing reckless disregard of human life, or of the safety of persons exposed to its dangerous effects, or there is that entire want of care which would raise the presumption of a conscious indifference to consequences, or which shows wantonness or recklessness, or a grossly careless disregard of the safety and welfare of the public, or that reckless indifference to the rights of others which is equivalent to an intentional violation of them."

*Id.* (quoting *Owens-Corning Fiberglas Corp. v. Ballard*, 749 So. 2d 483, 486 (Fla. 1999)).

THIS CASE

Appellee's argument for an assessment of punitive damages against Hospital Specialists is essentially that, by allowing Lancaster to provide after-hours care for Deen, Hospital Specialists violated its written protocol, of which Lancaster and Dr. Khan were each named parties. Appellee reasons that, due to the complexity of Deen's medical condition or problems, the medical care and treatment that Deen required was outside the scope of Lancaster's duties and responsibilities as an ARNP.

Hospital Specialists' protocol at issue established a practice model under which Lancaster, as a nurse practitioner, was permitted to provide inpatient health care services under the general supervision of Dr. Khan. Among other things, Lancaster was allowed to: (1) manage the health care of those patients for which he had been educated; (2) see patients independent of, but under the general supervision of, the physician; (3) perform

7

physical examinations and assessments; (4) treat common health problems considered under the practices of Internal Medicine; and (5) prescribe, initiate, monitor, alter, or order any prescription medication within the scope of his training and knowledge base, including controlled substances as outlined in Florida Statutes.

The protocol also established Dr. Khan's duties and responsibilities. Specifically, Dr. Khan was to (1) provide general supervision over routine health care and management of common health problems; (2) provide consultation and/or accept referrals for complex health problems; and (3) be available by telephone or other communication device when he was not physically available on St. Vincent's premises. Dr. Khan was also to be consulted for any condition that was outside the scope of Lancaster's practice.

Appellee also asserted that Lancaster's care and treatment of Deen exceeded that permissible under section 464.012, Florida Statutes (2017). This statute set forth those functions that an ARNP may perform within the framework of an established protocol. They include the prescription or ordering of medication; initiating appropriate therapies; managing selected medical problems; monitoring and managing patients with stable chronic diseases; and initiating, monitoring, or altering therapies for certain uncomplicated acute illnesses. *See* § 464.012(3)–(4). And while Lancaster, as an ARNP, may perform these functions, a physician "shall maintain supervision for directing the specific course of medical treatment." *See Siegel v. Husak*, 943 So. 2d 209, 213 (Fla. 3d DCA 2006) (quoting § 464.02(3), Fla. Stat. (2003)).

As previously indicated, our standard of review in this case is de novo. More particularly, as no live testimony was weighed or considered by the trial court, we are in the same position as the trial court when analyzing whether the proffered evidence provides a reasonable basis for the recovery of punitive damages.

Our review of the record evidence and proffered evidence shows that well before the June 8 after-hours call from the hospital nursing staff to Hospital Specialists about Deen's condition, Dr. Khan had seen and treated Deen in the hospital and had established a post-surgery treatment plan for the hospital's nursing staff to follow. The records do show that Dr. Khan, on

8

behalf of Hospital Specialists, assigned Lancaster to take after-hours call for the evening of June 8 for his patients, not just Deen. The records also indicate that the symptom of hypotension related to Lancaster by the hospital nurses on the evening of June 8 falls within an ARNP's permissible scope of care, and that the administration of an intravenous saline bolus, as directed by Lancaster, can be an appropriate response to this symptom.

Appellee's argument for asserting a punitive damages claim is not, however, predicated on whether Lancaster, in general, may properly administer care for hypotension. Instead, Appellee asserts that, due to the known complexity of Deen's medical problems at the time, Lancaster's care in ordering the intravenous saline bolus, without first consulting with Dr. Khan, violated both Hospital Specialists' aforementioned protocol and section 464.012, Florida Statutes. Assuming that Lancaster's action violated the protocol and section 464.012, the dispositive question here, though, is whether assigning Lancaster to take after-hours call for Dr. Khan's patients, including Deen, was so outrageous in character or reprehensible to expose Hospital Specialists to a claim for punitive damages under section 768.72. Our answer is "No."

A finding of intentional misconduct, under section 768.72(2)(a)'s definition, would require that Dr. Khan had actual knowledge that, under the aforementioned circumstances, there was a high probability that additional injury or damage would result to Deen by permitting Lancaster to take the after-hours call. There is insufficient record evidence or proffered evidence that Dr. Khan either knew or otherwise intended for Lancaster to independently order medical treatment for Deen outside the scope of Lancaster's practice without consulting him.

Furthermore, even if there were sufficient evidence to demonstrate that Dr. Khan knew or intended that Lancaster would treat Deen outside the scope of Lancaster's practice without first consulting him, the evidence would have to further demonstrate that Dr. Khan knew that there was a high probability that additional injury or damage would result to Deen. It is not enough that such a result *could* or *might* occur.

9

Additionally, there is insufficient evidence that Dr. Khan condoned or ratified Lancaster's independent treatment with actual knowledge of a high probability that doing so would result in additional harm or death to Deen. There is insufficient record or proffered evidence demonstrating that Dr. Khan was either not available or refused to consult with Lancaster by phone regarding Deen's physical condition. We therefore conclude that Appellee failed to demonstrate a reasonable basis for an award of punitive damages based on "intentional misconduct."

The proffered evidence is similarly unavailing to reasonably show the existence of "gross negligence." On the evening of June 8, Dr. Khan's hospitalized patients were under the care of a team of nurses, with Lancaster being available for any after-hours calls; and they were all operating under treatment plans ordered by Dr. Khan. Again, there is no evidence to show that Dr. Khan was unavailable for consultation by phone if an issue arose regarding Deen. The facts of the case do not rise to the level of Hospital Specialists, through Dr. Khan or Lancaster, evincing a reckless or conscious disregard of or indifference to human life to meet the definition of gross negligence under section 768.72(2)(b). *See Valladares*, 197 So. 3d at 11.

Finally, we therefore also conclude that the actions of Dr. Khan, as president of Hospital Specialists, in allowing Lancaster to first take the after-hours call regarding Deen, did not rise to a willful and malicious level whereby Hospital Specialists could be found directly liable for punitive damages. *See Schropp v. Crown Eurocars, Inc.*, 654 So. 2d 1158, 1159–60 (Fla. 1995). Accordingly, we reverse the order under review and direct the trial court to enter an order denying Appellee's motion to amend.

REVERSED and REMANDED for the entry of an order denying the motion to amend the complaint.

MAKAR and KILBANE, JJ., concur.

10

_____

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

_____