900 So.2d 637 (2005)
ESTATE OF Beulah DESPAIN, etc., Appellant,
v.
AVANTE GROUP, INC. and Avante at Leesburg, Inc., Appellees.
No. 5D03-3383.
District Court of Appeal of Florida, Fifth District.
March 24, 2005.
Rehearing Denied May 4, 2005.
*639 Susan B. Morrison of Law Offices of Susan B. Morrison, P.A., and Brian L. Thompson of Wilkes & McHugh, P.A., Tampa, for Appellant.
Betsy E. Gallagher, Aram P. Megerian and Michael C. Clarke of Cole, Scott & Kissane, P.A., Tampa, for Appellee.
SAWAYA, C.J.
The Estate of Beulah Despain appeals a final judgment rendered pursuant to a jury verdict awarding compensatory damages for violation of the decedent's rights as a nursing home resident under section 400.022, Florida Statutes (1999), negligence, and the decedent's wrongful death. Despain specifically appeals the order denying the personal representative's motion to amend the complaint to allege a claim for punitive damages against Avante Group, Inc. and Avante at Leesburg, Inc. The issue we must resolve is whether Despain made a sufficient showing by evidence in the record or proffer to establish a reasonable basis to plead a claim for punitive damages pursuant to section 768.72(1), Florida Statutes (1999).
The decedent, eighty-one-year-old Beulah Despain, was admitted to a nursing home owned and operated by Avante Group, Inc. and Avante at Leesburg, Inc. on January 15, 1999. She was hospitalized on April 1, 1999, and died of respiratory arrest secondary to aspiration pneumonia on April 6, 1999. The personal representative of the estate filed suit for compensatory damages and subsequently filed a motion to amend the complaint to allege a claim for punitive damages. In a lengthy memorandum, the estate proffered the facts it asserted formed the reasonable basis for its claim of punitive damages and filed affidavits of witnesses. This motion was denied and a subsequent motion was filed. After once again considering the proffered facts and the record evidence, the trial court denied the subsequent motion and the case proceeded to trial, resulting in a verdict and judgment awarding compensatory damages to Despain.
In order to properly decide whether the requisite showing was made under section 768.72(1) to allow Despain's claim for punitive damages, we must first determine the correct standard that establishes whether misconduct is so egregious as to warrant an award of punitive damages. Next, we must determine the appropriate standard of review that will guide us in our application of the legal standard to the record evidence and the proffer presented by Despain so we can decide whether it is sufficient to establish a reasonable basis to plead a claim for punitive damages. Once these two standards are determined, we can resolve the issue on appeal and arrive at a conclusion.

I. The Requisite Showing That Must Be Made To Allow A Claim For Punitive Damages

A. The Basic Standard

A resident who has a cause of action against a nursing home under section 400.022, Florida Statutes (1999), may recover punitive damages in appropriate cases. § 400.023(1), Fla. Stat. (1999); see also Beverly Enters.-Fla., Inc. v. Spilman, 661 So.2d 867, 873 (Fla. 5th DCA 1995), review denied, 668 So.2d 602 (Fla.1996).[1] *640 Punishment of the wrongdoer and deterrence of similar wrongful conduct in the future, rather than compensation of the injured victim, are the primary policy objectives of punitive damage awards. Owens-Corning Fiberglas Corp. v. Ballard, 749 So.2d 483 (Fla.1999); W.R. Grace & Co.-Conn. v. Waters, 638 So.2d 502 (Fla. 1994).
To merit an award of punitive damages, the defendant's conduct must transcend the level of ordinary negligence and enter the realm of willful and wanton misconduct, which the courts define as conduct that is of a
gross and flagrant character, evincing reckless disregard of human life, or of the safety of persons exposed to its dangerous effects, or there is that entire want of care which would raise the presumption of a conscious indifference to consequences, or which shows wantonness or recklessness, or a grossly careless disregard of the safety and welfare of the public, or that reckless indifference to the rights of others which is equivalent to an intentional violation of them.
White Constr. Co. v. Dupont, 455 So.2d 1026, 1029 (Fla.1984) (quoting Carraway v. Revell, 116 So.2d 16, 20 n. 12 (Fla.1959)), receded from on other grounds, Murphy v. International Robotic Sys., Inc., 766 So.2d 1010 (Fla.2000); see also Owens-Corning, 749 So.2d at 486 (quoting White Constr.). Section 400.023(5), Florida Statutes (1999), which codifies this standard, provides that "[f]or the purpose of this section, punitive damages may be awarded for conduct which is willful, wanton, gross or flagrant, reckless, or consciously indifferent to the rights of the resident."[2] This court and others have applied the standard adopted by the court in White Construction, and codified in section 400.023(5), to awards of punitive damages under chapter 400. See Beverly Enters.-Fla., Inc.; Key West Convalescent Ctr., Inc. v. Doherty, 619 So.2d 367 (Fla. 3d DCA 1993).

B. The Corporate Employer Standard

A corporate employer, like an individual employer, may be held liable for punitive damages based on the legal theories of either direct or vicarious liability. Schropp v. Crown Eurocars, Inc., 654 So.2d 1158 (Fla.1995). Despite assertions to the contrary by Despain, we believe that this is not a case where direct corporate liability for punitive damages is applicable because there is an insufficient showing of willful and wanton misconduct on the part of a managing agent or primary owner of Avante Group, Inc. and Avante at Leesburg, Inc. See Schropp. Rather, if these corporate employers are to be held accountable, Despain must show that they are vicariously liable. In order to hold a corporate employer vicariously liable for punitive damages for the acts of its employees, the plaintiff must establish: (1) *641 fault on the part of the employee that rises to the level of willful and wanton misconduct and (2) some fault on the part of the corporate employer that rises to the level of at least ordinary negligence. Schropp; Mercury Motors Express, Inc. v. Smith, 393 So.2d 545 (Fla.1981); Beverly Enters.-Fla., Inc.[3]

C. The Pleading Requirements

In order to plead a claim for punitive damages, a plaintiff must comply with section 768.72(1), Florida Statutes. This statute provides:
In any civil action, no claim for punitive damages shall be permitted unless there is a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages. The claimant may move to amend her or his complaint to assert a claim for punitive damages as allowed by the rules of civil procedure. The rules of civil procedure shall be liberally construed so as to allow the claimant discovery of evidence which appears reasonably calculated to lead to admissible evidence on the issue of punitive damages. No discovery of financial worth shall proceed until after the pleading concerning punitive damages is permitted.
§ 768.72(1), Fla. Stat. (1999) (emphasis added);[4]see also Fla. R. Civ. P. 1.190. Because the amount of an award may be a pittance to a rich man and ruination to a poor one, the goal of punishment must of necessity take into account the financial worth of the wrongdoer. Accordingly, although section 768.72(1) is procedural in nature, it also provides a substantive right to parties not to be subjected to a punitive damage claim and attendant discovery of financial worth until the requisite showing under the statute has been made to the trial court. Simeon, Inc. v. Cox, 671 So.2d 158, 160 (Fla.1996); Globe Newspaper Co. v. King, 658 So.2d 518 (Fla.1995).[5]
*642 There is no definition of the term "reasonable basis" in section 768.72(1). Therefore, in deciding whether a "reasonable basis" was established by the record evidence and proffer presented by Despain to allow the requested claim for punitive damages under section 768.72(1), we must determine the appropriate standard of reviewde novo or abuse of discretionto apply.

II. Standard Of Review To Determine Whether A Reasonable Basis Has Been Shown To Allow A Claim For Punitive Damages

Because section 768.72(1) provides a substantive right to a defendant not to be subjected to discovery of his or her financial worth until the trial court has found a reasonable basis for a plaintiffs claim for punitive damages, the court in Holmes v. Bridgestone/Firestone, Inc., 891 So.2d 1188, 1191 (Fla. 4th DCA 2005), held that the abuse of discretion standard is inappropriate to review orders granting or denying a request to plead a claim for punitive damages. Although we are not much persuaded by that particular reasoning, we do agree with the part of the decision in Holmes that indicates the de novo standard of review is appropriate. We will now endeavor to explain why we arrive at this conclusion.
In discussing the requirements of section 768.72(1), the court in State of Wisconsin Investment Board v. Plantation Square Associates, Ltd., 761 F.Supp. 1569, 1581 n. 21 (S.D.Fla.1991), stated that "a `proffer' according to traditional notions of the term, connotes merely an `offer' of evidence and neither the term standing alone nor the statute itself calls for an adjudication of the underlying veracity of that which is submitted, much less for countervailing evidentiary submissions." Therefore, a proffer "is merely a representation of what evidence the defendant proposes to present and is not actual evidence." Grim v. State, 841 So.2d 455, 462 (Fla.) (citation omitted), cert. denied, 540 U.S. 892, 124 S.Ct. 230, 157 L.Ed.2d 166 (2003); LaMarca v. State, 785 So.2d 1209, 1216 (Fla.), cert. denied, 534 U.S. 925, 122 S.Ct. 281, 151 L.Ed.2d 207 (2001). A reasonable showing by evidence in the record would typically include depositions, interrogatories, and requests for admissions that have been filed with the court. Hence, an evidentiary hearing where witnesses testify and evidence is offered and scrutinized under the pertinent evidentiary rules, as in a trial, is neither contemplated nor mandated by the statute in order to determine whether a reasonable basis has been established to plead punitive damages, See Surrey Place of Ocala v. Goodwin, 861 So.2d 1291 (Fla. 5th DCA 2004) (holding that a hearing on a motion to amend to allege punitive damages is not necessary); Solis v. Calvo, 689 So.2d 366, 369 n. 2 (Fla. 3d DCA 1997) ("Pursuant to Florida Statute section 768.72 (1995), a punitive damage claim can be supported by a proffer of evidence. A formal evidentiary hearing is not mandated by the statute.") (citation omitted); Strasser v. Yalamanchi, 677 So.2d 22, 23 (Fla. 4th DCA 1996) ("[A]n evidentiary hearing is not mandated by the statute before a trial court has authority to permit an amendment. Pursuant to section 768.72(1), a proffer of evidence can support a trial court's determination."); Will v. Systems Eng'g Consultants, Inc., 554 So.2d 591 (Fla. 3d DCA 1989); see also Porter v. Ogden, Newell & Welch, 241 F.3d 1334 (11th Cir.2001).
Because record evidence or proffer is specified in section 768.72(1), we reject the argument that the abuse of discretion standard applies to determine whether the trial court properly found that a reasonable basis was or was not established. *643 "Judicial discretion has been defined as: `The power exercised by courts to determine questions to which no strict rule of law is applicable but which, from their nature, and the circumstances of the case, are controlled by the personal judgment of the court.'" Canakaris v. Canakaris, 382 So.2d 1197, 1202 (Fla.1980) (quoting 1 Bouvier's Law Dictionary and Concise Encyclopedia (8th ed.1914)). It is firmly established that trial courts are granted discretion in making decisions because they have a superior vantage to observe what transpired in trial proceedings and to weigh the credibility of the witnesses, their testimony, and the evidence admitted.[6] In Stephens v. State, 748 So.2d 1028 (Fla. 1999), the court explained:
We recognize and honor the trial court's superior vantage point in assessing the credibility of witnesses and in making findings of fact. The deference that appellate courts afford findings of fact based on competent, substantial evidence is an important principle of appellate review. In many instances, the trial court is in a superior position "to evaluate and weigh the testimony and evidence based upon its observation of the bearing, demeanor, and credibility of the witnesses." Shaw v. Shaw, 334 So.2d 13, 16 (Fla.1976). When sitting as the trier of fact, the trial judge has the "superior vantage point to see and hear the witnesses and judge their credibility." Guzman v. State, 721 So.2d 1155, 1159 (Fla.1998), cert. denied, 526 U.S. 1102, 119 S.Ct. 1583, 143 L.Ed.2d 677 (1999). Appellate courts do not have this same opportunity.
Id. at 1034. For example, a trial judge has discretion in granting or denying a new trial because he or she presided over the proceedings and observed the witnesses as they testified and the evidence as it was presented by the parties. See Baptist Mem'l Hosp., Inc. v. Bell, 384 So.2d 145, 146 (Fla.1980) ("The discretionary power to grant or deny a motion for new trial is given to the trial judge because of his direct and superior vantage point."); Cloud v. Fallis, 110 So.2d 669, 673 (Fla. 1959) ("When a motion for new trial is made it is directed to the sound, broad discretion of the trial judge, who because of his contact with the trial and his observation of the behavior of those upon whose testimony the finding of fact must be based is better positioned than any other one person fully to comprehend the processes by which the ultimate decision of the triers of fact, the jurors, is reached.") (citations omitted); Wilson v. The Krystal Co., 844 So.2d 827, 829 (Fla. 5th DCA 2003) ("A trial court is given broad discretionary latitude to grant or deny a motion for new trial because of its direct and superior vantage point of the trial proceedings.") (citation omitted).
*644 However, when assessing and analyzing record evidence or a proffer, a trial court is in no better position than an appellate court to determine its sufficiency because the trial court is not called upon to evaluate and weigh testimony and evidence based upon its observation of the bearing, demeanor, and credibility of witnesses. See, e.g., Murray v. State, 692 So.2d 157, 164 (Fla.1997) ("Under the de novo standard of review we have in this area of law, we find that the evidence proffered by the State here falls far short of all three requirements set out in Ramirez [v. State, 651 So.2d 1164 (Fla.1995)] for the admission at trial of expert testimony concerning a new or novel scientific principle like DNA.") (footnote omitted). Accordingly, the personal judgment of the trial court is not needed to decide the sufficiency of record evidence or a proffer.
We conclude, therefore, that discretion is not the standard that should apply when determining whether record evidence or a proffer is sufficient to establish a reasonable basis to plead a claim for punitive damages; rather, the finding of a reasonable basis under the statute requires a legal determination by the trial court that the requirements of section 768.72(1) have been met. See Henn v. Sandler, 589 So.2d 1334, 1335-36 (Fla. 4th DCA 1991) ("That finding necessarily includes a legal determination that the kind of claim in suit is one which allows for punitive damages under our law. Thus, to that extent, the legal sufficiency of the punitive damage pleading is also in issue in the section 768.72 setting."). Accordingly, we should review a trial court's order granting or denying a motion to amend to state a claim for punitive damages de novo. We are of the view that the standard that applies to determine whether a reasonable basis has been shown to plead a claim for punitive damages should be similar to the standard that is applied to determine whether a complaint states a cause of action. See Holmes (holding that the analysis to determine whether a claimant has established a reasonable basis to plead a claim for punitive damages is similar to the analysis applied to determine whether the allegations of a complaint are sufficient to state a cause of action). Within the framework of this standard, we will view the record evidence and the proffer in the light most favorable to Despain and accept it as true. Sobi v. Fairfield Resorts, Inc., 846 So.2d 1204 (Fla. 5th DCA 2003).
The essence of the record evidence and the proffer establishes that as of the decedent's admission to Avante on January 15, 1999, she suffered from a number of maladies, including Alzheimer's disease and dementia; that the nursing staff knew that the decedent was at risk for weight loss, dehydration and malnutrition and was also informed that the decedent had difficulty swallowing and eating; that the nursing staff failed to monitor the decedent's food and fluid intake and to notice signs that she was choking on her food; that the decedent was also being overmedicated, which contributed to her array of problems; that within two weeks of her admission, the decedent had begun to lose weight and became dehydrated, contributing to her overall deterioration; the decedent had developed aspiration pneumonia as a result of choking on and inhaling her food; that although the decedent was treated for aspiration pneumonia, the nursing staff failed to prevent a recurrence or to even notice her difficulties in chewing and eating; that the nursing staff failed to develop a care plan to address these problems until March 2, 1999, by which time the decedent's weight had dropped over six pounds to eighty-eight pounds; that the decedent continued to suffer from malnutrition and dehydration and to inhale her food and nothing was really done to address her weight loss or eating problems prior to her discharge; that these problems *645 and the neglect was so extreme that by April 1, 1999, when the decedent was admitted to the hospital, she presented with lung congestion, fever, a decreased level of consciousness, clinical dehydration, a urinary tract infection, and sepsis with aspiration pneumonia; that tests were performed at the hospital that revealed that the decedent aspirated her food when she swallowed and that she needed a feeding tube; and that the decedent ultimately died of respiratory arrest secondary to aspiration pneumonia on April 6, 1999. We conclude that this evidence constitutes a reasonable showing of willful and wanton conduct on the part of the corporate employees that evinces a reckless disregard of and a conscious indifference to the life, safety, and rights of the residents exposed to its dangerous effects.
As to the vicarious liability of the corporate entities, the record evidence and proffer shows that the facility was not adequately staffed, which contributed to the inability to provide the decedent with proper care, and that numerous records regarding the decedent's care were incomplete, missing, or had been fabricated, which made assessment, treatment, and referrals of the decedent much more difficult. We believe that this showing established a reasonable basis to conclude that the corporate entities were negligent. Accordingly, Despain established a reasonable basis to plead a claim for punitive damages based on the theory of vicarious liability.

III. Conclusion

Based on the de novo standard of review applicable to motions to dismiss for failure to state a cause of action, we have viewed the record and the proffered evidence in the light most favorable to Despain and accept it as true. Analyzing this evidence in accordance with the standard that determines the level of misconduct that warrants an award of punitive damages and the corporate employer standard, we conclude that it formed a reasonable basis to allow Despain to plead a claim for punitive damages. Accordingly, we reverse the order denying Despain's motion to amend the complaint and remand for proceedings consistent with this opinion.
We believe it wise to protect the conclusion we reach from any interpretation suggesting that Despain is entitled to a punitive damage award. We, therefore, stress that we have merely determined Despain's right to plead a claim for punitive damages. Whether Despain will be able to prove entitlement to an award will depend on the jury's view of the evidence submitted or the trial court's disposition of a proper motion made prior to the jury's verdict.
REVERSED AND REMANDED.
THOMPSON and MONACO, JJ., concur.
NOTES
[1] We note that the pertinent provisions of the Florida Nursing Home Act found in chapter 400, Florida Statutes, were substantially amended in 2001. Specifically, the Legislature stated:

Notwithstanding any other provision of this act to the contrary, sections 400.0237, 400.0238, 400.4297, 400.4298, Florida Statutes, as created by this act, and section 768.735, Florida Statutes, as amended by this act, shall become effective May 15, 2001; shall apply to causes of action accruing on or after May 15, 2001; and shall be applied retroactively to causes of action accruing before May 15, 2001, for which no case has been filed prior to October 5, 2001.
Ch. 2001-45, § 62, Laws of Fla. Section 400.0237 was added to specifically provide for punitive damage awards under the Act. Because the cause of action in the instant case accrued in 1999 and suit was filed on May 5, 2000, the provisions of section 400.0237 are inapplicable. Accordingly, we will apply the provisions of the 1999 version of the Act.
[2] Section 400.023, Florida Statutes, was substantially amended in 2001 and subsection (5) was deleted. That amendment became effective after the cause of action in the instant case accrued. We will, therefore, apply the provisions of subsection (5) of the 1999 version of section 400.023.
[3] Section 768.72 was amended in 1999 as part of the 1999 Tort Reform Act to include subsection (3), which adopts a different standard. This amendment became effective on October 1, 1999. Ch. 99-225, § 22, Laws of Fla. Because the cause of action in the instant case accrued prior to that date, the new standard does not apply.
[4] As part of the 1986 Tort Reform Act, the Legislature enacted section 768.72, which imposed requirements that had to be complied with before a litigant was entitled to plead a claim for punitive damages. The Legislature substantially amended section 786.72 when it enacted the 1999 Tort Reform Act to add three new subsections. However, the provisions of the previous version of section 768.72 were included unchanged in subsection (1) of the amended version. Because the cause of action in the instant case accrued prior to enactment of the 1999 Tort Reform Act, we will apply the previous version of section 768.72. However, we cite to subsection (1) of section 768.72 because that is the version that appears in the bound volume of the 1999 Florida Statutes. We also note that section 768.735, Florida Statutes (1999), enacted as part of the 1999 Tort Reform Act, provides that the provisions of section 768.72(2)-(4), 768.725, and 768.73 do not apply in civil actions arising under chapter 400, Florida Statutes. § 768.735(1), Fla. Stat. (1999). Although section 768.735 is not applicable to the instant action either, we note with interest that even under its provisions, the requirements of subsection (1) of the amended version of section 768.72 do apply to claims for punitive damages under chapter 400 because they are not excluded by section 768.735.
[5] Section 400.023(7), Florida Statutes, similarly requires that "[d]iscovery of financial information for the purpose of determining the value of punitive damages may not be had unless the plaintiff shows the court by proffer or evidence in the record that a reasonable basis exists to support a claim for punitive damages." However, this subsection did not become effective until October 1, 1999, which was after the cause of action in the instant case accrued, so we will not apply it. Ch. 99-225, § 30, Laws of Fla.
[6] See Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla.1980) ("In reviewing a true discretionary act, the appellate court must fully recognize the superior vantage point of the trial judge and should apply the `reasonableness' test to determine whether the trial judge abused his discretion."); Roseman v. Town Square Ass'n, Inc., 810 So.2d 516, 523-24 (Fla. 4th DCA 2001) ("Like most discretionary decisions, one to bifurcate the proceedings is very difficult to overturn on appeal because of the degree of deference appellate courts give to the trial court's superior vantage point, having viewed all of the proceedings in the case."), review denied, 832 So.2d 105 (Fla. 2002); National Healthcorp Ltd. P'ship v. Close, 787 So.2d 22, 25-26 (Fla. 2d DCA 2001) ("Nevertheless, a trial judge who is in a position to have first-hand knowledge of pending litigation and the conduct of counsel possesses broad discretion in discovery matters. . . . In measuring the reasonableness of a trial judge's discretion, appellate courts must recognize the superior vantage point of the trial judge.") (citation omitted).