THOMAS, J., Specially
Concurring.
In this civil foreclosure case, the trial court found that Appellant Bank of America (the Bank) engaged in egregious and intentional misconduct in Appellee Pates’ (Pate) purchase of a residential home. Thus, based on the trial court’s finding that the Bank had unclean hands in this equity action, it did not reversibly err in denying the foreclosure action and granting a deed in lieu of foreclosure. In addition, the trial court did not err in ruling in favor of the Pates in their counterclaims for breach of contract and fraud, and awarding them $250,000 in punitive damages and $60,443.29 in compensatory damages, against the Bank and its affiliate, Homefocus Services, LLC, which provided the flawed appraisal discussed below. Finally, the trial court did not reversibly err in granting injunctive relief and thereby ordering the Bank to take the necessary measures to correct the Pates’ credit histories.
In the bench trial below, the trial court found that the Bank assured the Pates, based on the appraisal showing the home’s value far exceeded the $50,000 mortgage loan, that it would issue a home equity loan in addition to the mortgage loan. This was a precondition to the Pates’ agreement to purchase the home, which was in very poor condition but had historical appeal for the Pates. The Pates intended to restore the home, but needed the home equity loan to facilitate restoration.
Before the closing on the property, the Bank informed the Pates that it would close on the home equity loan “later,” after the mortgage loan was issued. The Bank later refused to issue the home equity loan, in part on the ground that the appraisal issued by Homefocus was flawed. The Pates were forced to invest all of their savings and much of their own labor in extensive repairs. Thus, the trial court found that the Pates detrimentally relied on the representations of the Bank that it would issue the home equity loan. The record supports the trial court’s conclusion that the Bank acted with reckless disregard constituting intentional misconduct by the Bank. See generally, Lance v. Wade, 457 So.2d 1008, 1011 (Fla.1984) (“[Elements for actionable fraud are (1) a false statement concerning a material fact; (2) knowledge by the person ... that the representation is false; (3) the intent ... [to] induce another to act on it; and (4) reliance on the representation to the injury of the other party. In summary, there must be an intentional material misrepresentation upon which the other party relies to his detriment.”).
The trial court further found that the Pates complied with the Bank’s demand to obtain an insurance binder to provide premiums for annual coverage, and that the Bank agreed to place these funds in escrow, utilizing the binder to pay the first year of coverage and calculate future charges to the Pates. Although the Pates fulfilled this contractual obligation, the Bank failed to correctly utilize the escrow funds. Consequently, the Pates’ insurance policy was ultimately cancelled due to nonpayment. The Pates attempted to obtain additional coverage but were unsuccessful due to the home’s structural condition. The Bank then obtained a force-placed policy with $334,800 in coverage and an annual premium of $7,382.98, which was *385 included on the mortgage loan, quadrupling the Pate’s mortgage payment.
The Pates offered to pay the original $496.34 monthly mortgage payment, but the Bank refused, demanding a revised mortgage payment of $2,128.74. The trial court found it “disturbing that Bank of America could financially profit due to [the Bank’s] failure to pay the home insurance. ... [T]he profits for one or more months of forced place insurance would have been substantial.”
The trial court further found that during the four years of litigation following the Pates’ default, the Bank’s agents entered the Pate’s home several times while the Pates resided there, attempted to remove furniture, and placed locks on the exterior doors. Following the Bank’s action, the Pates had to have the locks changed so their family could enter the residence. During two of the intrusions, the Pates were required to enlist the aid of the sheriff to force the Bank’s agent to leave their home. The trial court found as fact that, due to the Bank’s multiple intrusions into their home, the Pates were forced to obtain alternative housing for 28 months, at a cost of thousands of dollars.
The Bank’s actions supported the trial court’s finding that punitive damages were awardable. In Estate of Despain v. Avante Group, Inc., 900 So.2d 637, 640 (Fla. 5th DCA 2005), the court held that “[pjunishment of the wrongdoer and deterrence of similar wrongful conduct in the future, rather than compensation of the injured victim, are the primary policy objectives of punitive damage awards.” See also Owens-Corning Fiberglas Corp. v. Ballard, 749 So.2d 483 (Fla.1999); W.R. Grace & Co.-Conn. v. Waters, 638 So.2d 502 (Fla.1994).
In Estate of Despain, the court held that “[t]o merit an award of punitive damages, the defendant’s conduct must transcend the level of ordinary negligence and enter the realm of willful and wanton misconduct-” 900 So.2d at 640. Florida courts have defined such conduct as including an “entire want of care which would raise the presumption of a conscious indifference to consequences, or which shows ... reckless indifference to the rights of others which is equivalent to an intentional violation of them.” Id. (quoting White Constr. Co. v. Dupont, 455 So.2d 1026, 1029 (Fla.1984)). Here, the Bank’s intent to defraud was shown by its reckless disregard for its actions. The facts showing the Bank’s “conscious indifference to consequences” and “reckless indifference” to the rights of the Pates is the same as an intentional act violating their rights. See White Constr. Co., 455 So.2d at 1029. The record evidence provides ample support for the trial court’s ruling in favor of the Pates’ claim for punitive damages against the Bank.
The learned trial judge found that the Bank’s actions demonstrated its unclean hands; therefore, the Bank was not entitled to a foreclosure judgment in equity. Unclean hands is an equitable defense, akin to fraud, to discourage unlawful activity. See Congress Park Office Condos II, LLC v. First-Citizens Bank & Trust Co., 105 So.3d 602, 609 (Fla. 4th DCA 2013) (“It is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief[.]”) (quoting Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co., 324 U.S. 806, 814 (1945)). The totality of the circumstances established the Bank’s unclean hands, precluding it from benefitting by its actions in a court of equity. Thus, the trial court did not err by denying the foreclosure action.