# Third District Court of Appeal

## State of Florida

Opinion filed October 16, 2024.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D23-984
Lower Tribunal No. 21-17014

_____

**McLane Foodservice Inc., et al.,**
Appellants,

vs.

**Elizabeth Wool**,
Appellee.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, Jose M. Rodriguez, Judge.

Wicker Smith O'Hara McCoy & Ford, P.A., and Jessica L. Gross and Nina N. Batista, for appellants.

Davis Goldman, PLLC, Michael Bild, and Aaron P. Davis; Lauri Waldman Ross, P.A., and Lauri Waldman Ross, for appellee.

Before FERNANDEZ, GORDO and BOKOR, JJ.

BOKOR, J.

McLane Foodservice, Inc., and Cleavar Monroe, the defendants in a negligence case below, appeal from a nonfinal order allowing Elizabeth Wool, the plaintiff below, to amend her complaint to assert claims for punitive damages. McLane Foodservice and Monroe argue that Wool proffered insufficient evidence to provide a reasonable basis for recovery of such damages. We agree and reverse.

BACKGROUND

Wool, an employee of a KFC restaurant in Miami, sued McLane Foodservice, as well as Monroe, a delivery driver for McClane Foodservice. Wool alleged that she was injured while unstacking boxes of frozen chicken, delivered and stacked by Monroe, that collapsed on her. Wool claimed Monroe, and vicariously his employer, McLane Foodservice, were negligent because Monroe stacked the heavy boxes too high and too precariously.

Wool sought to amend her complaint to add claims for punitive damages against both the delivery driver and his employer, McLane Foodservice, based on gross negligence and vicarious liability. In support, Wool proffered an affidavit from the former manager of her KFC location attesting that the manager received "multiple complaints" from employees about how delivery drivers would frequently stack the frozen chicken boxes too high, which posed a safety risk to the employees at the restaurant

2

charged with unstacking the boxes. The former manager also attested that he contacted McLane Foodservice's customer service department by email and by calling the toll-free hotline to complain about the stacking of the boxes. Wool also proffered computer-generated images of the accident site, as well as McLane Foodservice's employee manual, showing that McLane Foodservice stacked its boxes to a certain height at its own locations prior to delivery. The trial court found this proffer sufficient to demonstrate a reasonable basis for the recovery of punitive damages and granted leave to amend to add claims for punitive damages against both McLane Foodservice and Monroe, which they appeal.

## ANALYSIS

The statutory framework presumes that punitive damages claim will be the exception in civil actions, not the rule. We know this because the legislature established that "[i]n any civil action, no claim for punitive damages shall be permitted unless there is a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages." § 768.72(1), Fla. Stat.; see also Fla. R. Civ. P. 1.190(f). This requirement triggers the trial court's "gatekeeping" function whereby it may allow punitive damages claims only where "a reasonable basis" for recovery exists. Globe Newspaper Co. v.

3

King, 658 So. 2d 518, 519 (Fla. 1995) ("[R]ead[ing] section 768.72 to create a substantive legal right not to be subject to a punitive damages claim and ensuing financial worth discovery until the trial court makes a determination that there is a reasonable evidentiary basis for recovery of punitive damages."); see also Fed. Ins. Co. v. Perlmutter, 376 So. 3d 24, 31 (Fla. 4th DCA 2023) (en banc) (same). We have jurisdiction to review the trial court's grant or denial of a motion to amend to add a claim for punitive damages. See Fla. R. App. P. 9.130(a)(3)(G); In re Amend. to Fla. Rule of App. Proc. 9.130, 345 So. 3d 725, 726 (Fla. 2022). We review the decision de novo. Grove Isle Ass'n, Inc. v. Lindzon, 350 So. 3d 826, 829 (Fla. 3d DCA 2022).

This isn't the time to prove the case, or even to determine that the evidence proffered itself constitutes "clear and convincing evidence . . . that the defendant was personally guilty of intentional misconduct or gross negligence." § 768.72(2), Fla. Stat. Instead, the gatekeeping function of the trial court in assessing a motion to amend to add a claim for punitive damages requires a determination of whether the proffer, if proven, provides "competent, substantial evidence at trial upon which a rational trier of fact could find that the defendant specifically intended to engage in intentional or grossly negligent misconduct that was outrageous and reprehensible enough to merit punishment." Perlmutter, 376 So. 3d at 33–34.

4

As the dissent explains, there is an emerging district split on the scope and breadth of this gatekeeping function. See Dissent at 7 (citing Mercer v. Saddle Creek Transp., Inc., 389 So. 3d 774, 777 n.1 (Fla. 6th DCA 2024)). But the facts proffered by Wool would lead us to the same result under any view. This is because the trial court's threshold analysis requires a determination of "whether the proposed amended complaint actually sets forth a claim that the defendants' conduct was grossly negligent, as defined by statute. Absent sufficient allegations, there would be neither a reason nor a framework for analyzing the proffered evidentiary basis for a punitive damages claim." Varnedore v. Copeland, 210 So. 3d 741, 745 (Fla. 5th DCA 2017). The trial court's gatekeeping function doesn't "weigh evidence or evaluate witness credibility," but it also must amount to more than "accept[ing] [the plaintiff's] gross misconduct allegations at face value." Mercer, 389 So. 3d at 777 (citations omitted).

Our de novo review similarly tests the sufficiency of the proffer in the light most favorable to the moving party, without accepting conclusory legal conclusions or labels such as "gross misconduct" at face value. Id.; see also Est. of Despain v. Avante Grp., Inc., 900 So. 2d 637, 644 (Fla. 5th DCA 2005) ("[W]hen assessing and analyzing record evidence or a proffer, a trial court is in no better position than an appellate court to determine its sufficiency

5

because the trial court is not called upon to evaluate and weigh testimony and evidence based upon its observation of the bearing, demeanor, and credibility of witnesses."). Wool's motion fails to "provide a reasonable basis for recovery of [punitive] damages" against either defendant. Globe Newspaper, 658 So. 2d at 519. The trial court therefore erred in finding Wool's limited proffer constituted sufficient evidence of a reasonable basis for recovery of punitive damages.

We reach this result because Wool's proffer offers nothing that could rise to the level of intentional misconduct or gross negligence on the part of either Monroe or McLane Foodservice. "'Intentional misconduct' means that the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage." § 768.72 (2)(a), Fla. Stat. "'Gross negligence' means that the defendant's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct." Id. (2)(b). Wool proffered no facts to support either theory of recovery.

For example, Wool offers no facts to support McLane Foodservice's, or its delivery driver's, "actual knowledge" of wrongfulness combined with a

6

"high likelihood" of resulting injury, much less that, armed with such actual knowledge, McLane Foodservice or the delivery driver intentionally pursued such a course of conduct. Similarly, to conclude that, absent such knowledge, the stacking of boxes as alleged, without more, could constitute gross negligence would turn almost any negligence claim into a possible punitive damages claim, in violation of every mandate by statute and case law that such claims must be the exception, not the rule. See W.R. Grace & Co.—Conn v. Waters, 638 So. 2d 502, 503 (Fla. 1994) ("Punitive damages are appropriate when a defendant engages in conduct which is fraudulent, malicious, deliberately violent or oppressive, or committed with such gross negligence as to indicate a wanton disregard for the rights of others."); Cleveland Clinic Fla. Health Sys. Nonprofit Corp. v. Oriolo, 357 So. 3d 703, 706 (Fla. 4th DCA 2023) ("[P]unitive damages are reserved for truly culpable conduct . . . so outrageous in character, and so extreme in degree that the facts of the case to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" (cleaned up)); Hosp. Specialists, P.A. v. Deen, 373 So. 3d 1283, 1288 (Fla. 5th DCA 2023) (same); BDO Seidman, LLP v. Banco Espirito Santo Int'l, 38 So. 3d 874, 876 (Fla. 3d DCA 2010) ("Punitive damages are a form of extraordinary relief for acts and omissions so egregious as to jeopardize not

7

only the particular plaintiff in the lawsuit, but the public as a whole, such that a punishment—not merely compensation—must be imposed to prevent similar conduct in the future."); Lee Cnty. Bank v. Winson, 444 So. 2d 459, 463 (Fla. 2d DCA 1983) ("Punitive damages may be properly awarded only where a tort involves malice, moral turpitude, or wanton and outrageous disregard of a plaintiff's rights.").

Wool proffers no evidence of malicious intent, or wanton or outrageous disregard of anyone's rights or safety. To the contrary, the proffer and evidence demonstrated the opposite—that no companywide stacking policy existed, that the stacking never resulted in an accident before this one at any location serviced by McLane Foodservice, and that no evidence existed to show that McLane Foodservice or its delivery driver was aware of any potential issues with boxes stacked to the height at issue. There's no proffer that anyone warned the delivery driver that he was stacking boxes too high, that the stacking above a certain level was dangerous, or even that there had ever been an incident where boxes fell when being unstacked, much less injured anyone. The delivery driver testified that his hand truck held five boxes of chicken at a time, and that's how many boxes he stacked at a time. Under these circumstances, no one would scream "Outrageous!"

8

Accordingly, no basis exists in the proffer to ground a claim against the delivery driver for anything beyond standard negligence.

The claim against McLane Foodservice fares no better. A punitive damages claim against an employer requires the plaintiff to proffer evidence showing that the employer "actively and knowingly participated in such conduct," "engaged in conduct that constituted gross negligence and that contributed to the loss, damages, or injury suffered by the claimant," or that its "officers, directors, or managers . . . knowingly condoned, ratified, or consented to such conduct." § 768.72(3)(a)–(c), Fla. Stat.; see also Napleton's N. Palm Auto Park, Inc. v. Agosto, 364 So. 3d 1103, 1106 (Fla. 4th DCA 2023) ("To show corporate culpable conduct, the plaintiff must present evidence that the corporation itself is directly liable. [B]ecause a corporation cannot act on its own, there must be a showing of willful and malicious action on the part of a managing agent of the corporation." (citations and quotations omitted)). None of those factors are present.

The proffer against McLane Foodservice fails for two reasons. To ground a punitive damages claim against an employer based on vicarious liability, a plaintiff must establish (1) that the employee's conduct satisfies the definition of intentional misconduct or gross negligence and, as relevant here, (2) that the employer, via its "officers, directors, or managers

9

. . . knowingly condoned, ratified, or consented to such conduct." Grove Isle, 350 So. 3d at 831 (citing section 768.72(3)(b), Florida Statutes). First, as explained, the proffer fails to ground a punitive damages claim against the principal tortfeasor, the delivery driver. Second, as far as McLane Foodservice's vicarious liability, "[w]hat is missing from [Wool's] motion and proffer, however, is an allegation or evidence that corporate management knowingly condoned, ratified or consented to the alleged misconduct." Tallahassee Mem'l Healthcare, Inc. v. Dukes, 272 So. 3d 824, 826 (Fla. 1st DCA 2019) (granting certiorari to quash amendment of pleadings to assert punitive damages claim where plaintiff imputed conduct of immediate supervisor to corporate management). The only evidence Wool proffered regarding McLane Foodservice's knowledge was the affidavit from her former restaurant manager. The affidavit explains that the restaurant manager complained not to McLane Foodservice's corporate management, but to its customer service department. Further, although the manager claimed that a customer service representative said that a supervisor would call back, the manager admitted that a supervisor never actually called, and the unsafe stacking of boxes continued. Far from grounding a punitive damages claim against McLane Foodservice, the admission that Wool has no idea if management (at any level) was ever notified of the calls and emails

10

destroys any basis to ground a claim for punitive damages against McLane Foodservice. A customer service hotline is not a managing agent. Wool makes no allegation that any managing agent of the employer was aware of customer complaints regarding the stacking of boxes at her restaurant location, let alone that they endorsed, approved, or willfully disregarded any unreasonable risk. See id.; see also Fetlar, LLC v. Suarez, 230 So. 3d 97, 100 (Fla. 3d DCA 2017) (quashing order granting motion to amend where plaintiff proffered communication with "a construction superintendent for defendant" but offered "no indication that [the superintendent] played any role in corporate management").

The dissent posits that calls to anonymous parties at a customer call center satisfy the requirement to support that "[t]he officers, directors, or managers of the employer, principal, corporation, or other legal entity knowingly condoned, ratified, or consented to such conduct." § 768.72(3)(b), Fla. Stat. The dissent grounds this conclusion on an inference (not in the record) "that management of the company established those contact methods" and it is "reasonable to infer that this methodology established by McLane was sufficient to inform management of any deficiencies." Dissent at 6. But what the dissent proffers isn't the standard, and it ignores the clear statutory mandate that the "officers, directors, or managers . . . knowingly

11

condoned, ratified, or consented to such conduct." § 768.72(3)(b), Fla. Stat. In Fetlar, for example, this court disallowed punitive damages based on vicarious or corporate liability with stronger facts than present here, under a more deferential certiorari review. 230 So. 3d at 100. The dissent attempts to distinguish the result in Feltar by noting that, unlike this case, "the plaintiff did not sue the individual employee, as required by that statute." Dissent at 10. But that misreads the rationale for Feltar as well as the plain language of section 768.72. Neither Feltar nor the statute contain a requirement that an employee be sued as well as an employer when a plaintiff seeks to hold the employer vicariously liable for an employee's act. Among other identified "shortcomings," Feltar explained that "the alleged misconduct of the individual construction managers, superintendents, construction workers— who were not, on the record before us, officers or managing members of the limited liability companies—is, without more, [not] misconduct of the four corporate petitioner/defendants for purposes of section 768.72." 230 So. 3d at 100. The analysis did not turn on who was sued or not sued; it was about the sufficiency of the proffer and the attribution of knowledge to the corporate defendants, as is the case here. Similarly, in Grove Isle, the employees weren't sued, only the Association. 350 So. 3d at 830. And the rationale for granting relief and disallowing a punitive damages claim there similarly had

nothing to do with the fact that the employees weren't sued and everything do to with the fact that the plaintiff couldn't meet the requirements of an employer's active participation or knowledge under section 768.72(3)(a)–(c). Id. at 831 ("Lindzon's amended complaint fails to satisfy any of the three alternative requirements of subsection (3)(a)-(c).").

We agree with the dissent that in reviewing the trial court's determination, we shouldn't "stray beyond the mandates of the statute" or "require a showing beyond that which is required by the statute." Dissent at 7. The requirement to put management on notice is a procedural requirement imposed by statute, which is not met in this case. See § 768.72(3), Fla. Stat. (setting forth the factual prerequisites for establishing punitive damages claim against an employer or corporate entity); see also Fetlar, 230 So. 3d at 99 ("A claimant's failure to comply with the procedural requirements of the punitive damages statute may be redressed via certiorari.") (citation omitted); Coronado Condo. Ass'n, Inc. v. La Corte, 103 So. 3d 239, 241 (Fla. 3d DCA 2012) (quashing order granting motion to amend to add a claim for punitive damages where notice provided only to a contracted property manager, and not a "controlling officer, director, or manager of the Association as a corporate entity" (quotation omitted)); Agosto, 364 So. 3d at 1107 (compiling cases that hold in the context of direct corporate liability that a corporate

13

manager is more than a "midlevel employee," but requires "an individual like a president [or] primary owner who holds a position with the corporation which might result in his acts being deemed the acts of the corporation" (citations and quotations omitted)). Holding Wool to the statutory requirement, the proffer of communications and emails to a customer service hotline and generic email account failed to show that management was "warned multiple times." Dissent at 8. A call to a hotline and a customer service email account fails to rise to the level of communication with a midlevel employee, much less an officer, primary owner, or the like whose acts or acquiescence could be deemed sufficient. Because Wool failed to proffer any notice to corporate management, or any other evidence sufficient to show that corporate management "knowingly condoned, ratified or consented" to the alleged act or policy, the proffer failed as a matter of law regarding McLane Foodservice's vicarious liability for a punitive damages claim. Dukes, 272 So. 3d at 826.

As pled, and as proffered in the motion to amend, Wool alleges a negligence claim. See, e.g., Mercer, 389 So. 3d at 778 (reversing and noting, under a different factual predicate, that "[t]his is a case about negligence. . . . But the record does not demonstrate Mercer's gross negligence, and therefore punitive damages are inappropriate"). Specifically, a claim that a

14

delivery person stacked boxes unreasonably high, where there was a claimed duty, breach, and resulting damages, constitutes a classic negligence claim, nothing more and nothing less. Wool presented no evidence or proffer that, taken in the light most favorable to Wool, would shock the conscience or demonstrate an "outrageous disregard" of the rights and safety of others. Winson, 444 So. 2d at 463.

The proffer provides no evidence or allegations, even if proven, that show culpability sufficient to ground punitive damages claim against the delivery driver or directly or vicariously against his employer. "Florida courts have repeatedly described the substantial impact of granting a motion for leave to amend to assert a claim for punitive damages. . . . For these reasons, punitive damages are reserved for truly culpable behavior and are intended to express society's collective outrage." Grove Isle 350 So. 3d at 830–32 (citations and quotations omitted) (reversing amendment of pleadings to add punitive damages claim against condominium association under direct and vicarious liability theories where plaintiff alleged only that individual property manager was aware of dangerous condition and could not impute negligence to association management). We therefore reverse the trial court's order allowing amendment of the pleadings to assert claims

for punitive damages against McLane Foodservice and Monroe, and remand for the trial court to enter an order denying same.

Reversed and remanded, with instructions.

GORDO, J., concurs.

16

FERNANDEZ, J., dissenting.

Because I believe that the plaintiff below demonstrated a reasonable basis to amend her complaint to seek punitive damages, I respectfully dissent. Although I take no issue with the facts as articulated in the majority opinion, those facts are somewhat incomplete since they omit discussion of the proffer filed by the plaintiff together with her motion to amend.

## The Statute

The statutory mechanism for seeking punitive damages is found in Chapter 768.72, Florida Statutes (2022). Specifically, 768.72(1) provides:

> (1) In any civil action, no claim for punitive damages shall be permitted unless there is a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages. The claimant may move to amend her or his complaint to assert a claim for punitive damages as allowed by the rules of civil procedure. The rules of civil procedure shall be liberally construed so as to allow the claimant discovery of evidence which appears reasonably calculated to lead to admissible evidence on the issue of punitive damages. No discovery of financial worth shall proceed until after the pleading concerning punitive damages is permitted.

Subsection (2) establishes the circumstances under which a defendant "may be held liable for punitive damages," and subsection (3) tells us when "punitive damages may be imposed for the conduct of an employee or agent" of an "employer, principal, corporation, or other legal entity."

In addition, Florida Rule of Civil Procedure 1.190(f) provides:

17

**Claims for Punitive Damages.** A motion for leave to amend a pleading to assert a claim for punitive damages shall make a reasonable showing, by evidence in the record or evidence to be proffered by the claimant, that provides a reasonable basis for recovery of such damages. The motion to amend can be filed separately and before the supporting evidence or proffer, but each shall be served on all parties at least 20 days before the hearing.

## The Proffer and Evidence in the Record

The essence of the 28-page proffer submitted by the plaintiff below was that:

On March 1, 2021, Plaintiff Elizabeth Wool was crushed by multiple 50-60-pound boxes that were stacked by McLane employees nearly 7 feet high at a KFC Store. In the months preceding the incident, the managing partner of the subject KFC store, Officer Angel Herrera – who is now a Miami-Dade Police Officer, [sic] continuously called and e-mailed McLane to complain that McLane's employees were constantly stacking boxes dangerously high at the store, which posed a safety hazard to his employees, including Plaintiff, who were legally required to unstack the boxes by code. McLane ignored each of those complaints. The very same dangerous safety hazard that McLane had prior notice of continued to exist and caused the incident and injuries at issue.

The remainder of the document goes on to break down the facts articulated in the quoted paragraph above, cites to cases, and makes legal argument. In addition to the proffer, the plaintiff submitted, among other things, deposition testimony and affidavits, as follows:

1. Deposition transcript of Elizabeth Wool, the plaintiff.

2. The affidavit and deposition transcript of Angel Herrera, the manager of the KFC, who sent the several emails and telephoned McLane's customer service number.

3. Deposition transcript of Cleavar W. Munroe, the driver and delivery person.

4. Deposition transcript of Lamont Lawson, McLane's corporate representative.

In support of the proffer, Wool testified that "McLane is constantly putting things high up where it would be very difficult for us to reach." She further testified that she complained to the store manager, Angel Herrera, several times about the boxes of chicken being stacked too high. She testified that sometimes the stacked boxes were "leaning like they were about to fall." She testified that on the day of the incident, "everything is stacked high as usual," that boxes were "stacked higher than my head." She also testified that when she went to rearrange the boxes of chicken on the day of the incident, the stacks became unstable, and the boxes of chicken fell on her. She testified that the boxes had been stacked "extremely high" and stacked six or seven boxes high.

In his affidavit and deposition, Herrera testified that he sent "multiple emails" to McLane "complaining about the dangerous and improper method

by which McLane drivers were delivering and stacking products/boxes" at the KFC store. He testified that he sent McLane emails notifying them that the boxes were being stacked too high and that it was hard for the KFC employees to unstack the boxes due to the weight. He identified the email addresses and further testified that he made several phone calls to his contact number with McLane. Herrera testified he was told McLane would speak to the drivers and that Herrera would be referred to a supervisor and/or a supervisor would contact him. Herrera further testified he was never referred to a supervisor, nor did a supervisor contact him, and that he does not think McLane ever spoke to the drivers. Herrera also testified that McLane drivers frequently stacked the boxes of chicken six to eight boxes high at a time. He testified that he spoke to his supervisor about the boxes being stacked dangerously high, and he thought his supervisor told him he was going to contact McLane, as well.

Munroe testified that when he delivers boxes of chicken, he uses a hand truck. The hand truck accommodates five boxes of chicken, and that is how high he stacks the boxes inside of the KFC. He stated that although it is possible for a taller driver to stack boxes higher than five-high, and the taller drivers did so, he does not do so. Munroe testified that the boxes of frozen chicken weigh 50-55 pounds. He further testified that McLane had no

20

limit as to how high a driver could stack the boxes. Lawson, the corporate representative and general manager of two McLane distribution centers, essentially stated that he does not manage the way that drivers do their deliveries and that there is no present policy at McLane regarding the stacking of boxes during deliveries so that there is no maximum number of boxes that could be stacked in one column by a driver.

## Discussion

The requirement for amendment of a complaint to seek punitive damages is established by Florida Statute. "In any civil action, no claim for punitive damages shall be permitted unless there is a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages." § 768.72(1), Fla. Stat. (2022). This provision requires the plaintiff to show nothing more than a "reasonable showing by evidence in the record or proffered by the claimant." Id.

Examination of the proffer and evidence in the record presented by the plaintiff below and discussed above, establishes a reasonable showing as follows:

1.    Plaintiff claimed that boxes were stacked up to seven feet high, that the boxes weighed approximately 40 to 50 pounds, and

21

that the boxes were sometimes stacked precariously so that the load was unbalanced. This created a safety hazard.

2. McLane was repeatedly put on notice of this safety hazard and failed to act, exposing the KFC employees, and specifically Wool, to serious injury.

The majority takes issue with the fact that emails and phone calls to McLane went to the customer service number and to customer service email addresses. Although that is true, those methods of contacting the company were established by McLane. It is reasonable to infer that management of the company established those contact methods to ensure that their company was providing good and proper service to its clients, and it is just as reasonable to infer that this methodology established by McLane was sufficient to inform management of any deficiencies. Proof that management was, in fact, aware of the dangerous condition in stacking of the boxes of chicken was plaintiff's burden before the trier of fact.

Before April 1, 2022, our appellate courts reviewed orders granting motions to amend to add punitive damages by certiorari, limiting our review to whether the trial court adhered to the procedural requirements of the rule. Globe Newspaper Co. v. King, 658 So. 2d 518 (Fla. 1995). Florida Rule of Appellate Procedure 9.130 was amended, with an effective date of April 1,

22

2022, to permit our appellate courts to review interlocutory orders that "grant or deny a motion for leave to amend to assert a claim for punitive damages." In re Amendment to Florida Rule of Appellate Procedure 9.130, 345 So. 3d 725, 726 (Fla. 2022).

The varied decisions of our appellate courts have been succinctly identified by the Sixth District Court of Appeal in footnote 1 to its decision in Mercer v. Saddle Creek Transp., Inc., 389 So. 3d 774 (Fla. 6th DCA2024):

> Our sister courts are divided on the quantum of proof a plaintiff must offer to amend its pleadings to add punitive damages. Compare Fed. Ins. Co. v. Perlmutter, 376 So. 3d 24, 34 (Fla. 4th DCA 2023) (holding that trial court must "make a preliminary determination of whether a reasonable jury, viewing the totality of proffered evidence in the light most favorable to the movant, could find by clear and convincing evidence that punitive damages are warranted"), with Cook v. Fla. Peninsula Ins. Co., 371 So. 3d 958, 961–62 (Fla. 5th DCA 2023) (stating that clear and convincing evidence reflects plaintiff's burden at trial, and trial court should decide motion for leave to amend under same standard as whether complaint states cause of action), and Deaterly v. Jacobson, 313 So. 3d 798, 801 (Fla. 2d DCA 2021) (reasoning that punitive damages statute "does not mandate that a trial court require a claimant to prove the entitlement to punitive damages by clear and convincing evidence at the pleading stage"). We decline to weigh in on this dispute because the parties have not argued the clear and convincing standard below or on appeal, and Rivera's motion fails both tests.

Mercer, 389 So. 3d at 777 n. 1(emphasis in original). It is my view that we stray beyond the mandates of the statute when we require a showing beyond that which is required by the statute; i.e., a reasonable showing on the

question of gross negligence and vicarious liability of a corporation when a sufficient proffer, or evidence in the record, is offered that opens the door for the level of proof required before the trier of fact to impose liability and assess punitive damages against a corporate entity.[1]  Can it be said that gross negligence is evident when the management of a company is warned multiple times that stacking 40-to-50-pound boxes seven-feet high poses a significant danger and that ignoring those complaints shows a "conscious disregard or indifference to life, safety, or rights of persons exposed to such conduct?" § 768.72(2)(b), Fla. Stat. (2022).  Because in reviewing the trial court's ruling that plaintiff made the necessary showing under section 768.72, this Court views the evidence in the light most favorable to plaintiff, and we do not weigh the evidence or evaluate witness credibility, I submit that the answer is yes. Mercer, 389 So. 3d at 777. Wayne Frier Home Ctr. of Pensacola, Inc. v. Cadlerock Joint Venture, L.P., 16 So. 3d 1006, 1009 (Fla.

---

[1] The majority opinion makes my point as it discusses numerous court holdings that interpret the statute to require more than it does.  The question of gross negligence or of the corporation's ignorance of a potentially dangerous situation should be decided by the trier of fact after a reasonable showing by proffer or evidence in the record.  Certainly, if the legislature wanted proof of those factors before the amendment of a complaint seeking punitive damages, they would have required more than a mere reasonable showing and certainly more than a proffer.  The legislature can still do so, and perhaps they should, if it is that body's purpose to require more than a reasonable showing and more than a proffer.

1st DCA 2009).[2] In Wool's case, the fact that McLane had no corporate procedure for the limits of how high an employee can stack boxes and the fact that after being contacted by the KFC store manager to report the danger of the heavy boxes being stacked too high McLane did not get back to the store manager or address the issue with its drivers is, itself, evidence of gross negligence. I do not agree with the majority's statement that "the stacking of boxes as alleged, without more, could constitute gross negligence would turn almost any negligence claim into a possible punitive damages claim" because Wool's proffer did have more: the store manager testified he notified McLane via email and phone calls, and thus, McLane was made aware of the issue. Furthermore, the store manager testified he told his supervisor the drivers were stacking the heavy boxes too high and told his supervisor that he had notified McLane, thus satisfying either subsection (b) or (c) of section 768.72(3). I believe the trial court was correct in determining that a reasonable jury could infer from Wool's evidence and proffer that McLane's conduct demonstrated reckless or careless indifference to her life or safety. Varnedore v. Copeland, 210 So. 3d 741, 747

---

[2] Of course, it is the plaintiff's burden to prove this to the trier of fact, and whether the plaintiff in the case before us will be able to prove entitlement to a punitive damages award will depend on the jury's view of the evidence submitted.

(Fla. 5th DCA 2017) ("After all, the decision of whether to grant the motion to add punitive damages will be based, at least in part, upon the trial court's determination of whether a reasonable jury could infer from the evidence and proffer that a defendant's conduct amounted to reckless or careless indifference to the plaintiff's life or safety.").

To arrive at its conclusion to reverse, the majority cites to various cases where the plaintiff was not permitted to make a claim for punitive damages. For example, the majority cites to Fetlar LLC v. Suarez, 230 So. 3d 97 (Fla. 3d DCA 2017) and states "this court disallowed punitive damages based on vicarious or corporate liability with much stronger facts than present here, . . ." But Fetlar is distinguishable because in that case, the plaintiff did not sue the individual employee, as required by the statute. Here, Wool in fact sued Munroe, McLane's employee, thus complying with section 768.72, something the plaintiff in Fetlar did not do.

The majority also cites to Coronado Condominium Association, Inc. v. La Corte, 103 So. 3d 239 (Fla. 3d DCA 2012) for the proposition that "quashing order granting motion to amend to add a claim for punitive damages where notice provided only to a contracted property manager, and not a 'controlling officer, director, or manager of the Association as a corporate entity'." In that case, this Court found that the amended complaint

and verified motion assumed that "the alleged misconduct of the individual property managers and construction workers - who were not . . . officers or members of the board of directors of the Association" - was without more, misconduct on the part of the Association. Id. at 240-42. Accordingly, the plaintiff did not comply with the procedural requirements of section 768.72. The plaintiff in Coronado did not impute the alleged misconduct to the Association as the employer of the named tortfeasors (or as a corporate defendant). Here, Wool's amended complaint and her proffer alleged that McLane had notice of Munroe's actions.

Similarly, the majority cites to Grove Isle Association, Inc. v. Lindzon, 350 So. 3d 826 (Fla. 3d DCA 2022), where this Court reversed a plaintiff's amendment of pleadings to add a punitive damages claim against a condominium association under direct and vicarious liability theories where plaintiff alleged only that the individual property manager was aware of the dangerous condition and could not impute negligence to the association. In Lindzon, the plaintiff did not sue the property manager/employee. Id. at 830. The evidence proffered by the plaintiff attached to her amended complaint showed all communications related the alleged wrongdoing were between plaintiff's counsel and the property manager. Id. at 831. Plaintiff made no separate allegations in her amended complaint regarding actions taken by

an Association officer, director, or managing member. In Wool's case, she proffered the testimony of the store manager regarding his communications with McLane via email, by phone, and in his conversation with his supervisor.

Finally, Tallahassee Memorial Healthcare, Inc. [TMH] v. Dukes, 272 So. 3d 824 (Fla. 1st DCA 2019), also cited by the majority, is distinguishable. In Dukes, plaintiff alleged that she had been defamed by the " 'director' of TMH's emergency room." Id. at 825. Plaintiff sought to add a punitive damages claim against TMH based upon the conduct of the "director" of the emergency room. Plaintiff argued that her motion should be granted because section 768.72(3)(b) specifically included misconduct condoned by the "directors" of a corporation. Id. at 826. However, the First District Court of Appeal found that plaintiff did not allege that the ER employee had a role in corporate management; nor did she allege or proffer evidence that "corporate management knew about the alleged defamatory conduct by its emergency room director." Id. In contrast, Wool proffered the testimony of the KFC store manager where he testified that he notified McLane about the high stacking of heavy boxes.

Unlike the majority, I believe there is record evidence based upon which a reasonable jury could conclude that McLane engaged in conduct that constituted gross negligence. When viewing the evidence in the light

most favorable to Wool, a reasonable jury could conclude that McLane had inadequate controls in place to prevent the high stacking of heavy boxes and inadequate training of its delivery drivers.

The purpose of punitive damages is not to provide more compensation to the plaintiff, but to punish the defendant for its wrongful conduct and to deter similar misconduct by the defendant and others in the future. Bistline v. Rogers, 215 So. 3d 607 (Fla. 4th DCA 2017). In a case such as Wool's, punitive damages, if awarded, would encourage McLane to have corporate policies to avoid accidents like this in the future, such as a corporate policy regarding the maximum stacking height for boxes weighing 50-60 lbs.

Appellate courts review an order granting a motion to amend to include a claim for punitive damages "solely to determine whether the trial court conformed with statutory procedural requirements in making the required evidentiary determination." Ross Dress for Less Virginia, Inc. v. Castro, 134 So. 3d 511, 525 (Fla. 3d DCA 2014). I believe under the record in this case, the trial court correctly made that determination. For these reasons, I respectfully dissent.